# D. W. Woods's Appeal.

A legacy charged on land and payable at a certain date, but in fact unpaid at the death of the legatee, and by the legatee bequeathed for life, in a general gift of all property real, personal, and mixed, to the devisee of the land, and after his death to his children absolutely, remains a first lien, to the amount of principal and interest unpaid when last bequeathed, although the payment of interest is suspended during the ownership of both land and legacy by the devisee.

Upon a sheriff's sale of the land on a judgment against the devisee his interest in the legacy does not pass to the purchaser, although the lien of the legacy is discharged and thrown upon the proceeds.

In such a case it is proper for the court to direct the purchaser to retain out of the proceeds the corpus of the legacy and declare him a trustee to pay the interest on the legacy to the devisee for life, and the principal to his children.

Notice given by a first lien creditor at a sheriff's sale that the land will

be sold subject to his lien will be inoperative to prevent the discharge of the lien if the sheriff disregards the notice and does not make the retention of the first lien a condition of the sale upon a subsequent judgment.

(Argued May 26, 1887. Decided October 3, 1887.)

July Term, 1887, No. 70, E. D., before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Common Pleas of Mifflin County distributing the proceeds of a sheriff's sale of real estate in execution. Affirmed.

Before James S. Rakerd, Esq., the auditor to distribute the proceeds of the sheriff's sale of the real estate of William R. Graham, including land in Granville township, in execution of judgments held by D. W. Woods and others, the following facts appeared:

The land in Granville township was devised to William R. Graham by his father, John Graham, who died in August, 1855, upon, *inter alia,* the condition that William should pay "$200 to my daughter, Mary Jane, her heirs, and assigns, in five years after my decease or the decease of his mother, if she survives me; and to the same, $200 more in six years after my decease or the decease of my wife, if she survive me."

Mary Jane Foster, the daughter referred to by the testator, died in 1882, having never received any part of the $400 bequeathed to her, or interest thereon, and by will provided:

"I hereby give, devise, and bequeath to my brother, William R. Graham, of said county, all property I may have at the time of my decease, whether real, personal, or mixed, and all goods, chattels, rights, credits, choses in action, legacies, or other moneys or properties then belonging or coming to me, to be used and enjoyed by him during the term of his natural life, and at his death to descend to and become absolutely the property of his children, share, and share alike, said Graham to have no other or greater interest in said property above stated than the right to use and enjoy the same during his natural life."

At her death the original $400 of legacies, with its accumulated interest, amounted to $901.60.

Upon the sale the residuary legatees by their attorney notified the sheriff that the sale was subject to their lien, but he disregarded the notice and sold without qualification.

The proceeds of the land were $1,385.

The auditor reported the following distribution:

| | | |
|---|---|---|
| To *pro rata* share of costs of sale and audit....... | $59 | 17 |
| To the two legacies of Mary Jane Foster, for $200 each, bequeathed in will of John Graham, deceased, and being the first lien on the said tract, with interest............................ | 901 | 60 |
| To mortgage of Charles K. Davis, now for use of D. W. Woods, entered April 1, 1867, on account debt and interest.......................... | 424 | 23 |
| | **$1,385** | **00** |

Seven exceptions to the report of the auditor were filed. They specified the refusal of the auditor to find that the Granville township tract was sold subject to the lien of the legacies in favor of Mrs. Foster; that the interest in said legacies did not pass to Mr. Woods, the purchaser of the land, at sheriff's sale; that the auditor should have found as a fact that the interest on said legacies was paid up to the death of Mrs. Foster; and that he erred when he appropriated the corpus of the legacies to the remaindermen under the will of Mrs. Foster.

In the court below BUCHER, P. J., after stating the facts, delivered the following opinion:

The facts found by an auditor must stand unless plain and palpable error be shown. We must, therefore, accept the findings of the auditor that the corpus of these legacies, with the accumulated interest at the death of Mrs. Foster, amounts to $901.60. This is the primary lien, and was discharged by the sheriff's sale. Although a charge on the land originally, it does not follow that the will of Mary Jane Foster giving the interest to William R. Graham rendered the time of payment uncertain so as to continue it as a fixed lien. On the contrary, it was not affected by her will, and was discharged as a lien, and it is now payable to the estate of Mary Jane Foster, to be administered according to her will. The fact that she mentions legacies in her will does not constitute a specific bequest, but is used as descriptive of the extent of her gift rather than its kind. The notice by anyone other than the sheriff and parties in interest, that the

land was selling subject to the lien, does not prevent its discharge.

In Barnet v. Washebaugh, 16 Serg. & R. 410, it is held that the lien of legacy will be discharged unless it appears expressly that it was the clear understanding of all parties that it was to remain on the land. Mere notice or loose declarations were pronounced insufficient for that purpose, and this was afterwards reiterated in Hellman v. Hellman, 4 Rawle, 440, and kindred cases.

But Mr. Woods did not buy subject to the legacies; i. e., he was not to pay the legacy in addition to his bid of $1,385, but the legacy was to be deducted and remain · in the land. Why should this be done in so uncertain a way? The court might appoint Mr. Woods a trustee to receive the $901.60 and pay the interest annually to William R. Graham; then all will be plain and readily understood. The auditor held that the sheriff's sale extinguished the interest of William R. Graham in the legacies. We do not see how this conclusion is reached. The sheriff's sale devested Graham's title to the land, but in no wise carried his interest in the legacies under his sister's will. The fact that the legacies were a charge on the land sold was not sufficient had a judgment on the land been bequeathed instead of a legacy. The legacy was not a final lien. The executor of the sister's will could have collected the legacies and invested the moneys elsewhere and paid Graham the interest. The accrued interest up to Mrs. Foster's death became principal—was the fund on which he drew the interest. Then how did the sheriff's sale affect Graham's interest under his sister's will? The interest accruing between the sister's death and the sheriff's sale was extinguished by operation of law, because he owed it to himself. Until creditors seize Graham's interest in his sister's estate, by due course of law, he still owns it. His land was sold, but not his interest in his sister's estate. The latter was never levied upon. It could not be sold by any such process as sold the land. It could only be sequestered. Coover's Appeal, 74 Pa. 146; Brown's Appeal, 27 Pa. 62; Styer v. Freas, 15 Pa. 339, and that class of cases merely decides that where a sale is postponed for the benefit of a life tenant, and the tenant declines the gift, or refuses to take under the will when a widow, the sale may take place immediately, because there is then no reason to preserve the estate for the life tenant.

Koenig's Appeal, 57 Pa. 352, only determines that a trust created for the benefit of a married woman becomes inactive and ceases upon her discoverture, by divorce or death of her husband, the trust being no longer needed. So, too, in Dodson v. Ball, 60 Pa. 493, 100 Am. Dec. 586, and many others.

But we are unable to see the application of these principles to the case in hand, there being in no sense a similarity of expression or purpose. All the preceding and cited cases destroyed no interest, extinguished no right; but the proposition insisted on here—namely, that the trust in William R. Graham, under his sister's will, falls because it so happens that as to $901 of corpus on which her brother, William R. Graham, was to receive the interest for life happened at the time of the making of her will to be charged on William's own lands (and hence the interest thereon was payable by himself to himself); that a change in the form of the corpus, by the sheriff's sale, which converted the charge into cash, merely substituting the money for the land, without his consent and by operation of law, put an end to his interest in the bequest, deprived him of all future benefit therein, and rendered the corpus without delay payable to the remaindermen—is not only not supported by the cases cited, but is contrary to the reasonable sense of mankind, and would be utterly destructive of the benevolent purposes of his sister, Mrs. Foster.

William R. Graham, just in his direst calamity, when the life estate in the fund is of supreme importance to his daily maintenance, is to be deprived of his sister's bounty. The principle of merger does not apply. That is a question of intention; and as Graham did not own the corpus, but the interest only, the interest could not merge into what Graham did not own. Had he become the owner of the corpus the merger would extinguish both interest and principal. There is no trust in the technical sense. There is simply a bequest of interest in the personal estate of the testator to her brother for life. Suppose a stranger had owned this legacy and the interest had been given to Graham for life; it would not be pretended that a sheriff's sale of the land charged would in any manner extinguish the interest. And no more does merger take place here, except that while Graham owned the legacy he was entitled to the annual interest; and as he need not pay to himself, the law extinguished it. How long was Graham to profit by the bequest of his sister? Until

he died and not until he was sold out by the sheriff. The descent is to be cast at his death, not when he became bankrupt.

It is clear, then, that the first appropriation filed by the auditor is what he conceives to be correct, and as that opinion is correct, except that he held that the children of William R. Graham were entitled to have uninterruptedly, without waiting for the death of their father, the $901.60 of the legacies; and in this we overrule him, and hereby appoint D. W. Woods, Esq., trustee to receive said $901.60 from himself or from the sheriff, if already paid to the latter, the interest whereof he shall pay to the said William R. Graham annually during his life, and the principal to his children, as described by the will of Mrs. Jane Foster, he to give security, to be approved by the court. As to the balance of the fund, it is hereby ordered to be paid out to the respective parties entitled, as found by the auditor and set forth in his first scheme of distribution, and his report as thus corrected is hereby confirmed absolute, unless an appeal be taken within twenty days.

The assignments of error specified substantially the same errors as the exceptions.

*Andrew Reed* and *D. W. Woods & Son,* for appellant.—William R. Graham cannot take anything out of the proceeds of the sale of his real estate adversely to his mortgage creditor. When his sister, Mrs. Foster, bequeathed to him the interest of the legacy, charged on this land during his life, it freed him from paying any interest so long as he lived. It then became, in the nature of a judgment in favor of the residuary legatees, payable, without interest, to them on the death of William R. Graham.

At law, the lien of the owner merges in the property, since no man can be both debtor and creditor; and equity will not uphold it in order to place in the hands of the owner himself a portion of that fund which ought to go to his creditor, whose debt was contracted on the faith of the fund. Babb v. Reed, 5 Rawle, 159, 28 Am. Dec. 650; Gilkeson v. Snyder, 8 Watts & S. 200; Koons v. Hartman, 7 Watts, 20; Loverin v. Humboldt Safe Deposit & T. Co. 113 Pa. 6, 4 Atl. 191.

The residuary legatees under the will of Mrs. Foster could not have any greater interest in this legacy by the sheriff's sale than her will gives them. We concede that the lien of the legacy is

devested by the sheriff's sale, unless the notice they gave at the sale estops them.

Where a bidder at a sheriff's sale of real estate announces that the property will be sold subject to his lien, and he purchases the property at a greatly reduced price, he will be estopped from participation in the distribution of the fund.    Birney's Appeal, 114 Pa. 519, 7 Atl. 150; Power v. Thorp, 92 Pa. 346.

Now, if a bidder is thus estopped, why not a lien creditor? But even if the facts are not sufficient to work an estoppel, then the purchaser, who is the mortgage creditor, being willing to hold this fund and pay the same over to the residuary legatees of Mrs. Foster on the death of William R. Graham, equity will impound the money until this event happens, on proper security being given by Mr. Woods.

*Horace J. Culbertson,* for appellees.—No loose declarations or notices made at the time of the sale amount to an agreement that the land shall be sold subject to the lien of the legacy.    Barnet v. Washebaugh, 16 Serg. & R. 414; Hellman v. Hellman, 4 Rawle, 440.

In Birney's Appeal, 114 Pa. 519, 7 Atl. 150, Barker, the lien creditor, gave notice that the property would be sold subject to his lien; and he himself was the purchaser, at a greatly reduced price (his purpose being to secure the property much below its value, to the detriment of the defendant) ; and the case is not in point here.

If the interest of Graham in his sister's estate were ended and determined, as appellant claims, then clearly the sum of $901.60, the corpus, would be payable presently to Graham's children, to wit, John A. Graham, Mary C. Banks, and Elizabeth Graham, on the authority of Coover's Appeal, 74 Pa. 146, and Koenig's Appeal, 57 Pa. 352.

OPINION BY MR. JUSTICE GREEN:

It seems almost unnecessary to add anything to what has been so well said by the learned court below in this case.    The two original sums of $200 each given by the will of John Graham to his sister, Mrs. Foster, were not continuing liens in any sense, nor were they payable at an uncertain time nor upon an uncertain event.    They were absolutely payable in August, 1860 and 1861.    From those dates they became a fixed and determined

debt due to Mrs. Foster and were charged upon the land. Of
course, they bore interest until Mrs. Foster's death; and the ag-
gregate of principal and interest at that time was a distinct asset
of her estate and subject to her disposition by will or otherwise.
If she had seen fit to give it to a stranger, either for life or ab-
solutely, there could have been no question as to the correctness
of the principles applied by the court below.

We can see no reason for making any distinction because she
chose to give it to her brother who happened to be the former
owner of the property affected by the charge for the payment of
the money. That charge simply made this debt a lien on the
land. It was of record; it was prior to all other liens, and it
was devested by the sheriff's sale. Both the auditor and the
court below have found that it was devested and that the land
was not sold subject to this lien. If it had been, the purchaser
would have been obliged to pay this debt, in addition to the
amount of his bid; and there is no evidence to support such a
claim. While notice was or may have been given of it at the
sheriff's sale, the sheriff simply disregarded it and made no con-
tract or condition with reference to it. By operation of law, the
lien of this debt was, therefore, devested, and it would be payable
out of the proceeds; but by the terms of Mrs. Foster's will the
interest of this sum is payable to William R. Graham during
his life; and there was no impropriety in securing the payment
both of the interest and principal, precisely as was done by the
learned court below.

It is confusing both ideas and authorities to argue that be-
cause William R. Graham was the owner of the land bound by
the lien of this debt, it was extinguished in any part because of
such ownership. During his ownership the money was payable,
not to him, but to Mrs. Foster; and of course, there was no mer-
ger, except as to interest after her death. After the sheriff's
sale he was not the owner, but a stranger was; and hence, again,
there could be no merger and no extinguishment. But by the
legal effect of the sale William R. Graham paid the whole
amount of the debt, principal and interest, and then the aggre-
gate sum, which properly, perhaps, would go to Mrs. Foster's
legal representative to be administered according to her will, be-
came subject to such disposition by the court as would effectuate
the intent of the testatrix. Practically, the order of the court
below was an investment of the money in accordance with the

will of Mrs. Foster; and in this there was no error. We see no mystery in the case and regard it as quite plain.

Decree affirmed.