VICTORY SPARKLER & SPECIALTY COMPANY
ET AL. *v.* MARY ELIZABETH GILBERT.

[No. 43, October Term, 1930.]

*Decided January 14th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward D. E. Rollins,* with whom was *E. Kirk Brown* on the brief, for the appellants.

*George Ross Veazey,* with whom was *Joshua Clayton* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Cecil County, reversing an order of the State Industrial Accident Commission disallowing the claim for compensation filed by the appellee, Mary Elizabeth Gilbert, the adopting mother of the deceased employee.

On May 31st, 1913, the appellee, Mary Elizabeth Gilbert, and her husband, William James Gilbert, then residents of Wilmington, Del., adopted, under the laws of the State of Delaware, one John A. Fortner, at that time five years of age, and likewise a resident of Wilmington, Del., who, after his adoption, was known as John Fortner Gilbert.

In 1918, Mr. and Mrs. Gilbert, with their adopted son, moved to Cecil County, Md. In June, 1922, the husband,

William James Gilbert, died, leaving surviving him his wife and adopted son, both of whom continued to live in Maryland until the 31st day of May, 1929, on which day the son died as the result of an accidental injury arising out of and in the course of his employment by the Victory Sparkler & Specialty Company.

John Fortner Gilbert had reached the age of twenty years on the preceding 10th day of September, 1928, and was, at the time of his death, unmarried, living with his adopting mother, then fifty-two years old, who was dependent upon him for maintenance and support.

The appellee filed her claim for compensation with the State Industrial Accident Commission, and, after a hearing thereon by the commission, her claim was disallowed on the ground that she, as an adopting mother of the deceased employee, was not, under the Workmen's Compensation Law of Maryland, a dependent mother entitled to receive compensation for the death of her adopted son. From the order disallowing her claim, an appeal was taken to the Circuit Court for Cecil County. The case was heard by the court sitting as a jury, and, as a result of the court's finding, a judgment was rendered in favor of the claimant, the order of the commission reversed, and the case remanded. The case is in this court on appeal from the judgment of the trial court.

The sole question presented by the appeal is: Was Mrs. Mary E. Gilbert, the adopting mother of John Fortner Gilbert, adopted by her and her husband under the laws of Delaware, a dependent mother within the meaning of the Workmen's Compensation Law of Maryland?

By the Delaware statute, *Revised Code of Delaware,* 1915, section 3065, the orphans' court of the county in which the application is made is authorized, in its discretion, to "render a decree ordering the issuance of a certificate of adoption to the applicant or applicants, * * * and * * * henceforth and for ever all the duties, rights, privileges and obligations recognized by law between parent and child shall exist between the applicant or applicants and the child, children, or young person or persons so adopted as

fully and to all intents and purposes, as if the said child, children, or young person or persons were the lawful and natural offspring or issue of the person or persons making the application for his, her, or their adoption." · ·

The statute of Delaware was proved by reading it in evidence from the printed Revised Code of that State, purporting to contain the laws of the State of Delaware, in accordance with sections 56 and 56A of article 35 of the Code of Maryland. *Harryman v. Roberts,* 52 Md. 64; *Mandru v. Ashby,* 108 Md. 695, 71 A. 312. Thereafter an exemplified copy of the decree of adoption of John Fortner Gilbert, duly certified under the laws of the State of Delaware, was produced in evidence.

It will be seen from a reading of the Delaware statute that its object and purpose was to establish the same relations between the adopting parent and the adopted child as those existing between a natural parent and his offspring, and it would, we think, be difficult to find language that would more effectually accomplish that object and purpose than that used in the statute, and the rights of the parties which flow from that relationship are to be recognized in Maryland, unless the exercise of these rights would be repugnant to the policy of Maryland, or prohibited by its laws. *Holloway v. Safe Deposit & Tr. Co.,* 151 Md. 323, 134 A. 497.

The law of Maryland relating to the adoption of children, Code, art. 16, sec. 76, provides that the effect of a decree of adoption thereunder "shall be to entitle the child so adopted to the same rights of inheritance and distribution as to the petitioner's estate, and the same rights of protection, education and maintenance as if born to such petitioner in lawful wedlock."

The Workmen's Compensation Law, art. 101, sec. 36, after naming those persons who are presumed to be wholly dependent for support upon a deceased employee, provides that "in all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death of such employee, but no person shall be

considered as dependent unless. such person be a father, mother, grandfather, grandmother, stepchild or grandchild * * * of the deceased employee."

It is contended by the appellant that "mother," as here used, does not mean adopting mother, but only a natural mother, and for such reason the appellee is not entitled to the compensation here sought. The answer to this contention depends upon the proper construction of the language used, considered in connection with the intent, purpose, and object of the statute.

The courts have generally held that statutes relating to workmen's compensation cases, though in derogation of the common law, should be given a liberal construction, and in this state it is expressly provided by statute (art. 101, sec. 63) that "the rule that statutes in derogation of the common law are to be strictly construed shall have no application to this article; but this article shall be so interpreted and construed as to effectuate its general purpose"; but, of course, the courts should be guided in construing a statute by the general rules of statutory interpretation, and should not be so liberal in their construction as to extend the meaning of such statute so as to cover beneficiaries, employees, or industries not within the intent of the law. 28 R. C. L, sec. 50, p. 755; *State v. District Ct.,* 131 Minn. 352, 155 N. W. 103; *Wilson v. Dorflinger,* 218 N. Y. 84, 112 N. E. 567; note to *Linnane v. Aelna Brewing Co.,* L. R. A. 1917D, p. 89, and cases there cited.

We have not been referred to any federal decision, or to any decision in any of the courts of last resort, in any of the states of the Union, nor do we know of any such decision, by which this exact question has been decided, except the case of *McDonald v. Texas Employers' Insurance Association* (Tex. Civ. App.), 267 S. W., pp. 1074, 1075. In that case this very question was presented in the construction of the Texas statute, which is very similar to ours. That statute, after naming those entitled to compensation without regard to the question of dependency, named others who were en-

titled thereto where dependency was shown, and among those so entitled were dependent "parents."

The Texas statute relating to the adoption of children provided that "the child or children so adopted shall have the same rights as against the person or persons adopting said child or children for support and maintenance, and for proper and humane treatment, as a child has, by law, against lawful parents."

The court in *McDonald v. Texas Employers' Association, supra,* said:

"The primary meaning of the term 'parent' is one who procreates, begets, or brings forth offspring, as father or mother; hence, when the term is literally interpreted, it can only include a father or mother related by blood to the child, and by the same token would, of course, exclude adopting parents and all others who by reason of the facts or circumstances stand *in loco parentis.* The·term, however, has received in different jurisdictions either a literal or liberal interpretation depending on the connection in which it was employed, and thus it has been held in such instances to either include or exclude, as the case may be, adopting parents or those standing *in loco parentis.* * * * The leading duties of a natural parent to his legitimate child are, to protect him, educate and maintain him, and, being thus legally obligated, the law accords to the parent the right to the custody, control and services of his child.

"An examination of the law regulating the relation between the adopting parent and the child, in the respects just named, will show that the status of the two relations are identical. That is to say, it is just as much the duty, under the law, of an adopting parent to protect, educate, and maintain his adopted child as if he were the natural parent, and as a corollary, he is entitled, under the law, just as the natural parent is, to the custody, control and services of the child. * * *

"We fail to find a difference upon which the Legislature could have seized as a reason for including one and excluding the other from the benefits of the compensation act.

"It cannot with reason be assumed that the Legislature would include a dependent natural mother and exclude, under the same facts and circumstances, a dependent adoptive mother, as in each case the loss is the same and the sound public policy that requires the loss to be repaired in one instance will be subserved by repairing it in the other."

In that case the court decided that the adopting parent was within the term "parent," as used in the Texas statute.

The appellant, in support of his contention, cites the case of *Scott v. Independent Ice Co.,* 135 Md. 343, 109 A. 117, 119. In that case the question was whether an illegitimate child was a "child" within the meaning of the statute. The statute, at that time, defined what was meant by "child," saying, " 'child' shall include a posthumous child and a child legally adopted prior to the injury of the employee," and the court, speaking through Chief Judge Boyd, said: "It would be difficult to believe that, if the Legislature had intended illegitimate children to have the benefit of this statute, it would not have included them in the definition of 'child,' inasmuch as it was careful to so define the word as to include posthumous and adopted children, whose **rights, in** at least the father's estates, were so much greater than illegitimate children under existing statutes."

The case of *Bell v. Terry & Tench Co.,* 177 App. Div. 123, 163 N. Y. S. 733, was cited by Judge Boyd, and he, speaking of it, said: "It was decided that 'child' or 'children' in the New York Compensation Law * * * did not mean illegitimate child or children. That statute had a definition of 'child' similar to ours, and the court said that the Legislature, by including posthumous and adopted children in the definition of 'child,' must be understood to have excluded any other child or children than such as would be included at common law and under the statutory definition." We call attention to what this court there said in referring to that case, as showing the importance given by Judge Boyd to the fact that, although the statute defined the meaning of "child," it failed to include within its meaning illegitimate child, and that fact, it would seem, formed an impor-

tant factor in his reaching the conclusion that an illegitimate child was not a child within the meaning of the statute.

The statute under consideration does not attempt to define the meaning of the word "mother," and consequently the above reasoning of the court in *Scott v. Independent Ice Co., Supra,* as to what was meant by "child," is not available here.

The *Coakley* case, 216 Mass. 71, 102 N. E. 930, is also relied on by the appellant in support of its contention. The question in that case was whether a stepchild was a child within the meaning of the law, and it was held that he was not.

It will be seen, however, that the relations existing between an illegitimate child and its parent, or between a stepchild and its step-parent, are vastly different from the relations existing between an adopted child and its adopting parent. In the case of an illegitimate child, there is no liability of the putative father for the maintenance and support of the child, or for its education, other than the enforced liability arising from the bastardy laws of the state; and in the case of a stepchild, the step-parent has no liability at all, which he or she is forced to recognize, for its education, maintenance, and support. It is quite different, however, in the case of an adopted child; here the adopting parent assumes the obligation to maintain, support, and educate him to the same extent as if he were his own offspring.

In the case before us, the adopting mother assumed the obligation to support, maintain, and educate the adopted son, then but five years of age, and, in return therefor, she was entitled to his services to the same extent as a natural mother, and this burden was borne by her through a period of his infancy when he was unable to render any service to her. It was after carrying this burden for years, and after her means had been greatly reduced, that he reached an age when his services meant much to her, and it was then that he contributed, and continued to contribute, to her support to the time of his death.

The object and purpose of the Workmen's Compensation Law was to compensate the employee for loss sustained by him resulting from an accidental injury, or, in case of his death, to compensate those dependent upon him, named in the statute. It is not an act of inheritance or distribution, and the fact that the appellee acquired under the adoption statute a qualified, and not an absolute, right to inherit from her adopted son, should not affect her right to compensation; and we do not believe it was the intention of the Legislature to exclude an adopting mother from compensation because of the want of such right in her, and to include a natural mother, where such right existed. This would certainly be against the liberal trend of legislation as disclosed by the amendments made to the statute since its original enactment, for, since the decision in *Scott v. Independent Ice Co. supra,* the Legislature (Act of 1920, chap. 456) has amended the act so as to make an illegitimate child a "child" within the meaning of the act.

The trial court, in our opinion, committed no error in reaching its conclusion, and the judgment therefore will be affirmed.

*Judgment affirmed, with costs.*