Lydia Fox, Appellee, v. The Waterloo National Bank, and The Waterloo Gasoline Engine Co., Interveners, Appellants, Howell Ralston, et al., Defendants.

**Pleadings:** objection to sufficiency. An objection to the insufficiency of a pleading which was in no manner tested on the trial, is unavailable on appeal, where enough was alleged to present the issue upon which the case was tried and no objection was made to the evidence offered in ·support thereof.

**What constitutes a homestead:** liability for debts. The homestead law is to be liberally construed, and under this rule the residence of a divorced husband which he himself, and an adult daughter who came to live with him as his housekeeper at the time of the divorce, occupied until his death, constituted his homestead, in the absence of satisfactory proof that he was obligated to pay the daughter's service; and the same was exempt from judicial sale for his debts, or those of an heir who had conveyed his interest therein.

*Appeal from Monroe District Court.*— Hon. F. W. Eichelberger, Judge.

Wednesday, February 8, 1905.

This is an action in partition brought originally by Agnes White *et al.* against defendant Ralston. The Waterloo Bank and the Waterloo Gasoline Engine Company intervened, claiming judgment liens upon the interest of defendant Frank Ralston in and to the property in controversy. Lydia Fox, one of the defendants in the main suit, filed a cross-petition claiming that a certain 40 acres of the land in controversy was the homestead of John Ralston at the time of his death; that Frank Ralston, one of his heirs, took his interest in this homestead free from the debts of his ancestors as well as his own; and that he conveyed his interest therein free from any judgment liens in favor of his creditors. The

trial court rendered a decree in favor of the cross-petitioner, and the interveners appeal.— *Affirmed.*

*J. F. Abegglen* and *Ezra A. Maxwell,* for appellants.

*Mason & Mason,* for appellees.

DEEMER, J.— Before going to the merits, it is well to notice a claim made by appellants that the cross-petitioner does not sufficiently plead the homestead character of the property in dispute. Had the pleading been tested by motion, doubtless this would be true; but there was enough, in the absence of a motion for more specific statement, to raise this issue; and, as the case was tried on the theory that this point was in issue, and no objections were lodged against the testimony offered to sustain the homestead character of the land, there is no merit in the contention. The point was in no manner raised or suggested in the trial court, and, if the homestead character of the land was not involved, there was nothing to try; that being the sole issue in the case.

1. PLEADINGS: objection to sufficiency.

John Ralston, who at one time owned the land, and through whom all persons are claiming, came to Iowa many years ago, and acquired the land in controversy. He and his wife, Elizabeth, moved upon the land, and occupied it as a homestead, save as hereinafter stated, down to the time that John obtained a divorce from his wife, in October of the year 1894. John and his wife were not happily mated, and in the year 1891 they separated and agreed to live apart. Shortly before their separation, John conveyed to his wife eighty acres of land in section 7 of a certain township in Monroe county, Iowa; and the wife, Elizabeth, quitclaimed to her husband one hundred and sixty acres of land in section 8 of the same township. The land in dispute is in section 8. Upon separation the wife, with certain of the children of the marriage, left the homestead theretofore occupied by the family, and

2. WHAT CONSTITUTES HOMESTEAD: liability for debts.

went to live upon the land in section 7. As soon as the mother left and went to live upon the land deeded to her by her husband, an adult daughter, who had theretofore been teaching school, abandoned this avocation, and went to live with her father upon the land in dispute. A son (Frank) also made his home with the father for a short time after the separation of his parents. When the decree of divorce was granted, the conveyances between husband and wife were confirmed, and each was decreed to hold his title as if the relation of husband and wife had never existed between them. Nothing was said in this decree about a homestead in either tract of land, the conveyances of which were thus approved. From the time of the decree down to the death of John Ralston, Lucy, his daughter, kept house for him; and the two lived upon the land in controversy, making it their home. The arrangement between the father and daughter is not very clearly shown. It does appear, however, that she abandoned her occupation of school-teaching, and went to live with her father, and to keep house for him, almost immediately upon the separation of her parents, and that she continued to live with and keep house for her father down to the time of his death. She filed a claim with the administrator of his estate for services rendered the father from July, 1891, to December 8, 1901. This claim was settled in some way, but just how does not appear, save that the heirs made some sort of an adjustment of the matter. The daughter, Lucy, asked permission to explain this claim while she was on the witness stand, but for some reason not appearing of record, was not permitted to do so. It is a conceded fact, however, that, from the time of the separation down to the death of John Ralston, he lived upon the homestead originally acquired by him, which is the land in dispute, and that his daughter Lucy lived with and kept house for him.

If the property in dispute was the homestead of John Ralston at the time of his death, then the decree of the trial court is correct; but, if it was not, then the case should be

reversed, and the interest of Frank Ralston, one of John's sons, should be made subject to the liens of appellants' judgments against him. Was the property then the homestead of John Ralston?

Section 2973 of the Code of 1897 provides, in substance, that a widower, though without children, shall be deemed a family, while continuing to occupy the real estate used as a homestead at the death of the wife, and that such right shall continue to a party to whom it is adjudged in a decree of divorce, during continued personal occupancy. This provision as to the right of a divorcee first appeared in the Code of 1897. It was not in existence when John Ralston obtained his divorce, but was in effect when appellants obtained their judgments, and, so far as appears, when the debts upon which the judgments were based were contracted. Section 2985 provides, in substance, that, if there be no survivor of husband or wife, the homestead shall descend to the issue of either, according to the rules of descent, and is to be held by the issue exempt from the antecedent debts of their parents and their own.

The trial court held that the amendment of section 2973 of the Code, giving a divorcee a homestead right in property awarded him, during continued personal occupancy, did not apply to the case, because it was not and could not be made retroactive. Conceding, *arguendo*, the correctness of this holding, we yet have the question, was the property the homestead of John Ralston at the time of his death by reason of his occupancy thereof with his daughter Lucy? Under our law the homestead of every family is exempt from judicial sale. And a family has been defined to be a collective body of persons who live in one house under one head or management. *Tyson v. Reynolds*, 52 Iowa, 431; *Parsons v. Livingston*, 11 Iowa, 106. One person cannot constitute a family, within the meaning of our homestead laws, save as recognized in section 2973 of the Code. And it is quite generally held that one who lives alone, with no one but servants or em-

ployés to assist him, is not entitled to a homestead. *Whaley v. Whaley,* 50 Mo. 577; *Calhoun v. Williams,* 32 Grat. (Va.) 18 (34 Am. Rep. 759); *Howard v. Marshall,* 48 Tex. 471; *Ellis v. Davis,* 90 Ky. 185 (14 S. W. Rep. 74). In such cases some sort of relationship must exist between the head and the other members of the group. According to some courts, this relationship must be such as that the inferior member or members is entitled by law to look to the superior both for support and protection, or, as said in some of the cases, there must be an obligation upon the head of the house to support the others, or some of them, and a corresponding dependence upon the part of the members so supported. *Harbison v. Vaughan,* 42 Ark. 539; *Bosquett v. Hall,* 90 Ky. 567 (13 S. W. Rep. 244, 9 L. R. A. 351, 29 Am. St. Rep. 404). But by some of the cases this obligation and dependence need not be a legal or enforceable one, a moral or natural one being held sufficient. *Ellis v. White,* 47 Cal. 73; *Holnback v. Wilson,* 159 Ill. 148 (42 N. E. Rep. 169); *Taylor v. Boulware,* 17 Tex. 74 (67 Am. Dec. 642); *Wade v. Jones,* 20 Mo. 75 (61 Am. Dec. 584); *Moyer v. Drummond,* 32 S. C. 165 (10 S. E. Rep. 952, 7 L. R. A. 747, 17 Am. St. Rep. 850); *Connaughton v. Sands,* 32 Wis. 387. Thus a man supporting an indigent father, mother, brother, or sister has been held to be the head of a family. *Parsons v. Livingston,* 11 Iowa, 104; *Marsh v. Lazenby,* 41 Ga. 153; *Chamberlain v. Brown,* 33 S. C. 597 (11 S. E. Rep. 439). So, also, a father whose adult daughter supported herself by teaching school, but who also performed household duties for him in compensation for her board, was held the head of a family. *Doolin v. Dugan,* 12 Ky. Law Rep. 749. So, also, a father who resided on his own land with an adult son and daughter. *Versailles Bank v. Guthrey,* 127 Mo. 189 (29 S. W. 1004, 48 Am. St. Rep. 621). Also a widow occupying a homestead with two adult children. *Brooks v. Collins,* 11 Bush (Ky.) 622. But we need not multiply cases from other jurisdictions. In *Whalen v. Cadman,* 11 Iowa, 226,

we held that an unmarried man who lived with his brother and his brother's wife, and who worked the farm on shares with the brother, was not the head of a family. But it was said in that case that the head of a family is primarily the husband or father, and that a son having mother or brothers or sisters, or either, depending upon him for support, and living in a household which he controlled, might be such head. In *Arnold v. Waltz,* 53 Iowa, 706, it was held that an unmarried woman who had taken charge of two children of a deceased sister upon the latter's death was the head of a family, and entitled to a homestead. In *Parsons v. Livingston,* 11 Iowa, 104, the plaintiff was a widower, who purchased the property claimed as a homestead, and took up his residence thereon, taking with him his mother, who was without other children. They continued to live upon the property, the plaintiff supporting his mother. Held, that plaintiff was the head of a family. In *Tyson v. Reynolds,* 52 Iowa, 431, a widower, with whom lived his son and his son's wife, and who employed a household servant, was held to be the head of a family. In that case it was said that the relation existing between such persons must be of a permanent and domestic character — not abiding temporarily together as strangers. " There need not, of necessity, be dependence or obligation growing out of the relation." In that case the son and his wife were provided for by the father as children or dependents. *Woods v. Davis,* 34 Iowa, 264, is also an instructive case.

These references show the trend of our decisions, and demonstrate that we are in full accord with those courts which hold that these homestead statutes should be liberally construed, and the reason and the spirit thereof conserved, rather than the letter. While in one case it was said that there need not, of necessity, be dependence or obligation growing out of the relation, we think that what was meant was that there need not be any legal obligation or condition of dependence, and this is what we now hold. But we do think

that, generally speaking, there must be something more than the mere relation of master and servant. In other words, there must be a natural or moral obligation of support, and a condition of dependence and actual support is sufficient. This is the rule sanctioned by the greater weight of authority, and the one which more nearly comports with the reason and spirit of the law.

Now, in the instant case the adult daughter abandoned her occupation as a teacher, and went to live with her father, after his separation from his wife, as his housekeeper. Under such a situation the father was morally bound to support the daughter. It may be he was legally bound, for there is no showing here of any such facts as would justify a recovery by the daughter for services rendered the father. There was no proof of any fact which would create an obligation on the father's part to pay for the services rendered by his daughter. They were, so far as shown, entirely gratuitous. The filing of the claim is a circumstance, or, rather, an admission by the daughter that she was to have compensation for her services; but this was compromised, was not paid in full, and was not approved by the probate court. Moreover, it was not binding upon the parties to this litigation, either as an adjudication or as an estoppel. The witness Lucy was not permitted to explain it, and, at most, it should be treated simply as a contradictory statement made by her. But she did not, in this claim which she filed, plead that there was any contract between herself and father whereby she was to receive compensation for her services.

Construing these homestead statutes "in the liberal spirit in which the provisions thereof are to be considered, in favor of those for whose benefit they were enacted," we think the trial court was right in holding that the property in controversy was the homestead of John Ralston at the time of his death, and in passing a decree in favor of the cross-petitioner.— *Affirmed.*