ANNA SHEEHY, Plaintiff and Appellant, v. GEORGE E. SCOTT, Defendant and Appellee, JOHN F. DeCAMP and EMMA DeCAMP, Interveners and Appellants.

**Homestead:** EXEMPTION. A homestead is exempt from the precedent debts of the heirs of the owner where such owner was the head of a family.

**Head of family:** HOMESTEAD EXEMPTION. To exempt the homestead to the heirs of a single person, as the head of a family, some one dependent upon the owner for support, under a natural or moral obligation, must occupy the property with the owner and be supported in whole or in part by him.

**Same.** Evidence reviewed and held that a son, over age, resided with and was supported by the mother through a natural obligation in such a sense as to justify a finding that the property was exempt as a homestead.

**Unexecuted land contract:** DEATH OF VENDOR: ATTACHMENT OF HEIR'S INTEREST. A contract for the sale of real property which has not been fully executed by the vendee does not pass the title, and upon the death of the grantor prior to such performance the interest of his heirs is subject to attachment at the suit of their creditors.

**Deeds:** PRESUMPTION AS TO DELIVERY. A deed will not be presumed to have been delivered, so as to defeat an attachment on the property, while anything remained to be done to the execution and acknowledgment of the same, or until accepted by the grantee regardless of the future intention of the grantors.

*Appeal from Muscatine District Court.*— HON. JAMES W. BOLLINGER, Judge.

WEDNESDAY, OCTOBER 18, 1905.

MARY A. SCOTT, a widow, died intestate May 13, 1903, seized of the following real estate: Lot 9 in block 71, in the city of Muscatine; also lot 8 and the east half of lot 9 in block 106, and lot 8 in block 107. Ten children survived her, one of whom, George E. Scott, was indebted to the plaintiff on a promissory note of $1,500, dated February 14, 1898, with interest at 6 per cent. per annum, on which this action was begun June 2, 1903, aided by writ of attachment, which was levied on Scott's interest in the above real estate June 20, 1903. He answered by admitting the indebtedness and alleging that lot 9 in block 71 was the homestead of deceased, and for that reason exempt from the levy. John F. De Camp intervened, and in his petition alleged the purchase of the east half of lot 9 and lot 8 from Mary A. Scott January 3, 1903; that George E. Scott had conveyed his interest therein to him, and he had taken possession, all prior to the levy, which he prayed to have vacated. The reply put in issue the allegations of the answer and petition of intervention. On hearing judgment was entered against George E. Scott as prayed. Lot 9 in block 71 was adjudged to be exempt as the homestead of deceased. Emma De Camp was substituted as intervener, and her petition dismissed, and the property other than the homestead ordered to be sold and the proceeds applied on the judgment. The plaintiff and intervener both appeal; that of the former being perfected.— *Affirmed.*

*Jayne & Hoffman,* for plaintiff.

*J. R. Hanley & Son,* for defendant.

*Richman & Richman,* for interveners.

LADD, J.— The husband of Mary A. Scott died in 1898. From that time until April, 1903, she operated the Scott House, a hotel in Muscatine. In April, 1902, she purchased lot 9 in block 71, but did not move into the house thereon

until April 7, 1903.  Shortly afterwards she was taken sick, and died May 13th of the same year.  The contention of the plaintiff is that this lot was not her homestead at the time of her death, and therefore the interest of George E. Scott, one of her ten surviving children, therein should be subjected to the lien of her judgment.  Our statute provides that the homestead is exempt from the precedent debts of the heirs of the owner.  All of Mary A. Scott's children had attained their majority. One son, Frank E. Scott, and a daughter, Mrs. Fahey, and the latter's daughter, had been living in the house with her for over a month, when she died.  It was her home, and the controversy is whether her relations with these children were such that she and they, or either of them, constituted a family; for in this State the exemption of the homestead is to the family.

1. HOMESTEAD: exemption.

A single person is not a family, and therefore cannot claim a homestead, unless continuing in possession as surviving spouse.  *Fullerton v. Sherrill*, 114 Iowa, 511; *Emerson v. Leonard*, 96 Iowa, 311.  " Family " has been defined as a collective body of persons who live in one house under one head or manager.  *Tyson v. Reynolds*, 52 Iowa, 431; *Parsons v. Livingston*, 11 Iowa, 104.  But this is not accurate, for strangers might thus band themselves together and live under the direction of a leader.  To constitute one or more persons, with another, living together in the same house, a family, it must appear that they are being supported by that other in whole or in part, and are dependent on him therefor, and, further, that he is under a natural or moral obligation to render such support. *Fox v. Waterloo Nat. Bank*, 126 Iowa, 481.

2. HEAD OF A FAMILY: homestead exemption.

Does the evidence indicate that such a relation existed between Mrs. Scott and those who lived with her ?  The record has convinced us that Frank E. Scott, though over 40 years old, was dependent on the deceased for his support. He had been married, but was divorced.  He was lazy, ad-

dicted to the excessive use of intoxicating liquors and mor-
phine, and was reputed a gambler. He had
kept a butcher shop, but, upon his father's
death in 1898, returned to the Scott House, where he lived
until his mother's removal to the premises in controversy.
For several years one Weaver had charge of the hotel office,
and Frank did chores about the hotel. After Weaver left
he took charge of the office, kept the books, and received
money, but one Kline was allowed part of his board for
sleeping in the office and caring for him when disabled by
the use of alcohol or morphine. That during this time his
mother supplied him with money is doubtless true, and he
may have construed that received as wages. Indeed, he tes-
tified that she had paid him " different prices at different
times — about $10 a week and my board "; that " mother
always paid all of her children wages; that mother paid me
wages up to her death, and I know she paid my sister Mrs.
Fahey every Saturday night." Nowhere does he undertake
to state that any agreement was had as to what he was to
receive, or what was in fact paid or when; and, aside from
his designation of what she gave him as wages, his testimony
is not inconsistent with the thought that she merely gave
him enough to supply his wants, which may have been more
or less than wages. During the six weeks prior to his
mother's death, he did nothing but chores about the house,
and since then he had continued in that occupation for his
board with his sister. Of course, he always has been in-
tending to leave, but, through the persuasion of mother and
sister, remained " until he got ready to settle." He admits
that he threatened the defendant that he would " swear to a
lie," rather than allow him to succeed, and this, with his
appearance on the stand, doubtless led the district court to
reject the story of having been merely an employé of his
mother, and adopt the more reasonable conclusion, deducible
from the record, that, through excesses, he had become prac-
tically incapable of caring for himself, and was being main-

3. SAME.

tained by his mother, because of the natural obligation to her child. The relation of Mrs. Fahey was not shown to have been that of a dependent, though she lived with her. But the two were enough to, and did, constitute a family within the meaning of the law. *Fox v. Waterloo Nat. Bank, supra,* and cases cited.

Rulings on objections to questions propounded to different witnesses, and also the taxation of costs, are assigned as errors, but not argued, and for this reason not decided. The proof, independent of such evidence, however, was sufficient to show that deceased, who was 79 years of age, was occupying the premises as her home; and as she, with her dependent son, constituted a family, the court rightly decided that the property was exempt as a homestead.

II.   In January preceding her death Mrs. Scott had entered into a contract for the sale of the east half of lot 9 and lot 8 in block 106 to John F. De Camp. The sum of **4. UNEXECUTED LAND CONTRACT: death of vendor: attachment of heirs' interest.** $50 had been paid, but possession was not given, nor a thing said concerning possession. The agreement recited that: "I have sold to John F. De Camp . . . my brick building and lot . . . for the sum of $3,000, and have received as purchase price thereof the sum of $50, to be forfeited, providing the purchase price, $2,950, is not paid on or before the 1st day of July, 1903. And, upon payment of the said $2,950 within the time herein stated, I am to execute a good and sufficient warranty deed of the said property to the said J. F. De Camp, for which I bind myself, my heirs, executors or assigns." The house was vacated by the tenant in April, and Mrs. Scott died in May. Upon her death Mrs. Fahey handed to Mrs. De Camp the keys to the house, but this was not shown to have been authorized by the heirs or legal representative of deceased. Not having been turned over by the owners in pursuance of the terms of the contract, or by the authority of the intervener or heirs other than Mrs.

Fahey, nothing was acquired thereby, and actual possession was not taken until long after the levy.

Intervener insists that the agreement effected an equitable conversion, as a result of which the purchaser became the owner of the land, and Mrs. Scott merely held title in trust to secure payment of the purchase price, and this passed to her legal representative as personal property. Had the contract effected a sale of the land, this would have been true. *Miller's Adm'r v. Miller,* 25 N. J. Eq. 354; *Williams v. Haddock,* 145 N. Y. 144 (39 N. E. Rep. 825); *Bender v. Luckenbach,* 162 Pa. 18 (29 Atl. Rep. 295, 296); *Donohoo v. Lea,* 55 Am. Dec. 725. In such a case equity considers the vendor, as to the land, a trustee for the purchaser, and the vendee, as to the money, a trustee for the seller. In other words, the vendee is the equitable owner, and the vendor merely retains title as security for the price, and his interest in the land is not subject to levy or writ of execution or attachment. *Baldwin v. Thompson,* 15 Iowa, 504; *Woodward v. Dean,* 46 Iowa, 499; *Rand v. Garner,* 75 Iowa, 311. See cases collected in note to *Bowen v. Lansing,* 57 L. R. A. 643. But this agreement was purely executory in character, and in no way bound the intervener to complete the purchase. Upon payment of the balance stipulated, she must execute a conveyance; but the only result of his failure to do so was the forfeiture of the amount paid. Specific performance might not have been enforced against him. Clearly, then, the contract did not vest in him any interest in the land. It merely specified how he might acquire it. *Richardson v. Hardwick,* 106 U. S. 252 (1 Sup. Ct. 213, 27 L. Ed. 145); *Stembridge v. Stembridge's Adm'r,* 87 Ky. 91 (7 S. W. Rep. 611); *Bostwick v. Frankfield,* 74 N. Y. 207; *Sweezy v. Jones,* 65 Iowa, 272.

But, if regarded as something more than a mere option, it was but an agreement to sell in the future, and not a present sale. The distinction between these two classes of contracts was pointed out in *Nunngesser v. Hart,* 122 Iowa,

647, where the court declared that in a contract to sell the vendor remained the owner of the land and liable for the payment of the taxes, though the rule is otherwise where the agreement amounts to a present sale. *Miller v. Corey,* 15 Iowa, 166; *Sackett v. Osborn,* 26 Iowa, 146. Possession is an important circumstance to be considered in determining the character of the contract, though not always to be regarded the test, for there may be a present sale with the right of possession postponed, the same as payment of the purchase price may be. *Marks v. Tichenor,* 85 Ky. 536, (4 S. W. Rep. 225); *Harris v. King,* 16 Ark. 126; *Brewer v. Herbert,* 30 Md. 301 (96 Am. Dec. 582). As Mrs. Scott did not cease to be the owner until death, the land as such descended to the heirs, and the interest of George E. Scott was subject to the levy.

It is insisted, however, that he previously had conveyed his interest to De Camp. A deed from the ten children to De Camp had been signed by half of them, and was received by intervener from a brother on the 15th day of June, with instructions, after signing, "to forward to the next one." He did so, with directions "to rush the deed along." It was returned to De Camp after the levy of the writ of attachment, and shortly thereafter he remitted to each, other than George E. Scott, his share of the deferred payment, and to him a part, and moved into the house with his family July 9th. The circumstances were such as to indicate an intention on the part of George E. Scott that the deed be delivered upon being signed and acknowledged by all the children, but this did not happen until after the levy of the writ of attachment. An instrument will not be regarded as delivered, when anything remains to be done by the parties who propose to deliver it. *Overman v. Kerr,* 17 Iowa, 485; *Hutton v. Smith,* 88 Iowa, 241; *Tewksbury v. O'Connell,* 21 Cal. 60.

Nor is there anything in the record tending to show an acceptance prior to the time it was returned to De Camp,

5. Deeds: presumption as to delivery.

and acceptance is quite as essential to the passing of title as the transfer of the deed. *Rittmaster v. Brisbane* (Colo. Sup.) 35 Pac. Rep. 736. Manifestly De Camp would not have cared for the property until all the heirs had joined in its execution, and acceptance by him prior to that time is not to be inferred. Nor, on the other hand, can it be assumed that any of the heirs intended the deed to become effective prior to its execution by all. Until then the option to purchase had not been exercised, and prior thereto the land was subject to levy of the writ. *Ex parte Hardy,* 30 Beav. 206; *Bras v. Sheffield,* 49 Kan. 702 (31 Pac. Rep. 306, 33 Am. St. Rep. 386).

It may be that for some purposes an equitable conversion, affected by an election to exercise an option to buy, will relate back to the date of the contract, though as to that the authorities are in conflict; but it cannot operate to dissolve an attachment levied on land prior to such election, and while the grantor retains the ownership. See note to *Bowen v. Lansing,* 57 L. R. A. 651. We conclude that the interest of defendant in the land was subject to the levy.— *Affirmed.*