ARMSTRONG-MCCLENAHAN COMPANY, Appellant, v. THOMAS RHOADS et al., Appellees.

**EXEMPTIONS:** Persons Entitled—Head of Family—Divorced Person. A debtor who lives alone and apart from his wife and children, who is unmarried and divorced from his wife and

under no obligation to support her, who, by said decree, has no custody of or control over his minor children except to visit them, and who furnishes them no support except occasional voluntary contributions, and who, by an executed transfer of property, has obligated another to care for and support his children, which obligation is being complied with, is not the "head of a family," and therefore not entitled to exemption of his personal earnings. Section 4011, Code, 1897.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

TUESDAY, JUNE 26, 1917.

APPEAL from a judgment of the district court of Linn County, Iowa, releasing attachment and discharging garnishee upon ground that the money due was for earnings due the defendant as the head of a family. Plaintiff appeals.—*Reversed.*

*L. M. Kratz*, for appellant.

No appearance for appellee.

STEVENS, J.—The Cedar Rapids Oil Company was garnished on execution December 10, 1915, as a supposed debtor of Thomas Rhoads', defendant. Defendant filed a duly verified application, asking that said garnishment be released, upon the ground that he was a resident head of a family; that the amount due from the garnishee was money earned as a laborer within 90 days preceding the date of the garishment. The court held the funds in the hands of the garnishee exempt from execution, and released the garnishment. The amount involved being less than $100, the court certified that the cause is one in which an appeal should be allowed.

The abstract does not set out the evidence, but the court made a finding of facts, and certified that defendant was divorced from his wife in 1912, upon the application of his wife, who was granted the full care and custody of all the minor children, which were all the children de-

EXEMPTIONS: persons entitled: head of family: divorced person.

fendant had; that his wife was awarded judgment for
$1,500 permanent alimony; that privilege was granted de-
fendant to visit his children at suitable times; that, at the
time the decree was entered, he turned over to his wife's
parents his equity in a home he had been buying on con-
tract, in consideration for which the grandparents agreed
to keep and care for said children; that they have lived
with their said grandparents since that time; that defend-
ant has not lived with his wife, nor has he lived in the
family with his children since that time, nor has he re-
married, but has lived by himself all of the time in room-
ing and boarding houses; has frequently visited the chil-
dren for a few hours at a time, and has contributed to
their support, at irregular intervals, clothing, shoes, etc.,
whenever he thought they needed such necessities, but has
in no way contributed toward their board and lodging or
in any other way, except turning over the equity in his
former home. He has stood good for medical and hospital
services for said children. All the money in the hands of
garnishee was the personal earnings of defendant, and was
earned within 90 days next preceding the garnishment.
Plaintiff appeals.

I.   The statute under which the court held the funds
in the hands of the garnishee exempt from execution is
Code Section 4011, which makes the personal earnings of
a debtor who is a resident head of a family, earned at any
time within 90 days of the levy, exempt from liability for
debt. The sole question presented on this appeal is whether
or not the defendant at the time was the head of a family.

The authorities defining "family" and "head of a fam-
ily" have been several times collected and reviewed by this
court, and it is unnecessary to again extensively review
the same. In *Linton v. Crosby*, 56 Iowa 386, a family is
defined as "the collective body of persons who live in a
house under one head or manager." See also *Emerson v.*

*Leonard,* 96 Iowa 311; *Fullerton v. Sherrill,* 114 Iowa 511; *Fox v. Waterloo National Bank,* 126 Iowa 481; *Sheehy v. Scott,* 128 Iowa 551; *In re Estate of Bishop,* 130 Iowa 250; *Blair v. Fritz,* 162 Iowa 716.

The husband and father who resides with and supports his wife and children is uniformly held to be the head of a family. The wife, however, under some circumstances, may become the head of a family. In *Linton v. Crosby,* supra, the husband and wife had lived separate and apart for seven years, during which time he neither contributed nor was asked to contribute to her support. He lodged in his office and boarded in the family of others. The court said:

"In the absence of a statute so providing, it is difficult to see why a person boarding in the family of others and lodging in his office for seven years can, at the expiration of that time, be regarded as a family, or the head of one. It is true a person may be a boarder and yet the head of a family. But in order to constitute him such, the boarding must be regarded as of a temporary character. * * * The mere fact he was liable for her support should not, we think, make him the head of a family. No family relation, as generally understood, existed between himself and wife. The policy and intent of the statute is to exempt certain property because the support of a family, great or small, is cast upon the head thereof. Such family must have an actual existence, as distinguished from one that exists theoretically only."

In *Emerson v. Leonard,* supra, the court held that a widow who lived alone, supported herself and others, when they were dependent upon her, by dressmaking, was not the head of a family after there ceased to be anyone residing with and dependent upon her. The court said:

"There cannot be a head of a family when there is no

family.  It is not material that there was once a family, if it has ceased to exist."

The court, in *Clemans v. Penfield*, 111 Iowa 511, held that a divorced wife did not have a homestead right in the property used by her and her husband as a homestead, and which was conveyed to her by her husband, at the time the divorce was granted, in payment of alimony; that the property lost its homestead character at the time of the divorce, because of the dissolution of the family and the abandonment thereof by the divorced wife.

In *Fullerton v. Sherrill*, supra, where the question involved was the right of a homestead exemption, held that:

"For the benefit of the family, the law 'exempts the home of the family from the burden that rests upon all other property, of being appropriated to the debts of the owner.  The immunity depends on two contingencies: First, occupancy as a home; second, that the owner shall have a family.  When either ceases, the exemption is at an end.  There can be no more reason for holding that a man who has lost his family shall continue to preserve an exempt homestead because he once had a family, than for saying the house which has once been exempt while occupied as a homestead shall continue to be exempt although totally abandoned as a residence."

The remaining cases cited variously define the head of a family.

"Exemption laws are enacted to prevent the unfortunate citizen from having all the necessaries of life swept away, and to preserve for him certain things reasonably necessary to enable him to earn a livelihood for himself and family.  The sole purpose of all such laws is to protect the citizens of the state from being reduced by financial misfortune to absolute want, and to encourage industry and thrift and the building up of homes by placing beyond the reach of creditors the homestead and such

tools, implements or appliances as a man may require to prosecute his business, whatever his walk in life or his occupation may be. Every man, even the extravagant and improvident, owes a first duty to those immediately dependent upon him. And so it is that the state has an interest that no citizen shall be reduced to a condition of destitution so as to be prevented from prosecuting useful industrial employments for which he may be fitted, and that families shall not be deprived by extravagance or misfortune of the shelter and comforts necessary to health and activity." Section 3, 11 R. C. L. 491, and cases cited. *Heaton v. Sawyer,* (Vt.) 15 Atl. 166.

In the case last cited, the right of the wife to claim a homestead right in the premises of her husband after her divorce was involved, and the court said:

"By the decree of divorce procured by the defendant, with the custody of the minor children decreed to her, they thereafter ceased to be a part of the family of Norman D. Sawyer. She, without remarriage, could never become his widow. The minor children, without a change in the decree, could never become or constitute a part of his family, over whom he could exercise parental control, or to whom he owed the duty of personal care and support."

To the same effect, see *Holcomb v. Holcomb,* (N. D.) 120 N. W. 547; *Wiggin v. Buzzell,* 58 N. H. 329; *Cooper v. Cooper,* 24 Ohio St. 488. The Supreme Court of Nebraska, in *Roberts v. Moudy,* 30 Neb. 683, held to the contrary.

The Supreme Court of Missouri, in *Caldwell v. Ryan,* 108 S. W. 533, 537, referring to exemption laws, said:

"The statutes of exemption were conceived in mercy for the unfortunate debtor, and are to be construed in that spirit, but they are not to be construed to give him what in common honesty does not belong to him. * * * The statute of exemption was made to cover as with a shield what the unfortunate debtor has in his possession when the

officer comes with a writ to take it from him. It was not made to arm him as with a sword to levy contribution on his neighbor."

The defendant in the case at bar did not reside with his wife or minor children; was separated from them by a decree of divorce. Under the decree, he was deprived of the right to exercise custody or control over them; he had conveyed his equity in his former homestead to the parents of his divorced wife, in consideration of which they agreed to maintain and support defendant's minor children. All that appears in the record is that he occasionally visited the children, and voluntarily contributed clothing and paid for medical services rendered the children. He was in no sense the head of a family. The statute exempting personal earnings was never intended to aid an individual to avoid the payment of his honest debts, but, as above stated, to preserve a certain advantage in favor of the family dependent upon him for support. While exemption statutes are to be given a liberal construction in carrying out their purpose, they should never become a means of enabling an improvident debtor to avoid the payment of obligations arising after he has ceased to properly come within the purview of the statute.

It is our conclusion that the funds in the hands of the garnishee were not exempt to the defendant, and that the judgment of the lower court should be and is—*Reversed*.

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.