### In re TAYLOR.

(District Court, N. D. Iowa, C. D. July 31, 1922.)

#### No. 1429.

Bankruptcy ⚙═➤396(4)—Husband, living apart from and not contributing to support of wife, not "head of a family," within exemption statute.

Where a tenant farmer, at the time of the filing of his bankruptcy petition, was living apart from and was not contributing to the support of his wife and child, he was not the "head of a family," within Code Iowa 1897, § 4008, exempting to the head of a family certain stock and farm implements.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Head of a Family.]

In the matter of the bankruptcy of Robert Taylor. On petition for a review of an order by the referee, sustaining a creditor's objections to the setting aside of certain property as exempt. Order affirmed.

Mitchell & Files, of Ft. Dodge, Iowa, for bankrupt.
Healy & Breen, of Ft. Dodge, Iowa, for opposing creditors.

SCOTT, District Judge. The above-entitled matter comes before the court on the petition of the bankrupt for review of an order by the referee sustaining objections of a creditor to the setting aside to the bankrupt a certain list of property as exempt. The bankrupt was, at the time of filing his petition and for more than two years prior thereto, a tenant farmer, and the property in question consists of a team and certain farming implements and other stock and property, which would be exempt, under section 4008 of the Code of Iowa of 1897, to the debtor, if "the head of a family."

The bankrupt was married during the month of October, 1919, and he and his wife lived together until the 5th of January, 1920, when the wife left and returned to her parents. During the following summer a child was born, which has at all times remained in the care and custody of the mother. The wife and child continued to live with the wife's parents, and were so living at the time of the hearing. The bankrupt rented and moved upon a farm about March 4, 1920, which he operated during the succeeding two years, at times living alone, at times having a man and wife in his employ living in the house with him, and at times having only a hired man living with him. At no time after the wife's departure in January, 1920, did the wife ever return to the home of the bankrupt, nor did they ever live together or maintain any relations. On two occasions the bank-

rupt went to the home of his wife's father, either to see the wife or the child, but remained only a few moments and left. The testimony would indicate that his reception was not cordial.

The bankrupt has not contributed anything, either to the support of his wife or his child, since his wife left him at the time stated. Some time before bankrupt filed his voluntary petition his wife had instituted a suit for divorce against him, asking custody of the child and alimony. The bankrupt thereupon instituted an action for divorce against the wife, in which he also asked the custody of the child. Neither of these divorce actions had been tried or determined at the time of the hearing before the referee. The bankrupt testified that he desired to contribute to his wife's support, but that her father would not permit it; that he desired to contribute to his child's support, but that he was not permitted to do so. There is some testimony upon the part of the wife's family in conflict with this, however. It is without dispute that at no time after the wife left bankrupt on January 5, 1920, has bankrupt resided with either his wife or child, or in any way contributed to their maintenance or support, and he is now demanding a divorce from his wife.

The question presented for determination is whether bankrupt was the head of a family, within the meaning of section 4008 of the Iowa Code of 1897, at the time he filed his voluntary petition in bankruptcy. If he was such head of a family, then he is entitled to have the property in controversy set aside by the trustee as exempt. If he was not such head of a family at the time mentioned, then he has no claims for exemption under said statute, and the property in question passes to the trustee for the benefit of creditors.

Able and well-prepared briefs were filed before the referee, and the referee's opinion and findings contain an exceptionally thorough examination of the Iowa decisions upon the subject. The following extract from the referee's opinion and findings will serve to indicate the trend and holdings of the Iowa Supreme Court upon this subject:

"The question, therefore, to be decided, is whether or not, under the laws of the state of Iowa, the bankrupt is the head of a family and therefore entitled to statutory exemptions. An examination of the cases decided by the Supreme Court of Iowa discloses the fact that that court has adopted the rule that a family is a collective body of persons, who live in one house, under one head or manager, and that to be the head of a family a person must be in charge of a household which is made up of other persons than himself. In Tyson v. Reynolds, 52 Iowa, 431, 3 N. W. 469, the court uses the following language, at page 470: 'A family is "the collective body of persons who live in one house, under one head or manager." The relation existing between such persons must be of a permanent and domestic character, not abiding together temporarily as strangers. There need not of necessity be dependence or obligation growing out of the relation.'

"This case was followed in Linton v. Crosby, Executor, 56 Iowa, 386, 9 N. W. 311 [41 Am. Rep. 107]. Here it is held that, where a husband and wife lived separate and apart for seven years prior to his death, he neither contributing nor asked to contribute to the wife's support, and where, during the time of the separation, he lodged in his office and boarded in the family of others, he was not the head of a family, at the time of his death, within the meaning of the statute. The court brings out the fact that the legal obligation to support the wife existed as fully and to the same extent as it had while the husband and wife were living together; but the rule is laid down that

something more than the mere existence of the legal obligation to support must be present in order to constitute a person the head of a family within the meaning of the statute. The added element, which the court holds to be necessary, is the fact of an actually existing household, in which the person claiming to be the head of the family is present along with the other persons who constitute the family, and over which he exercises supervision. The language of the opinion is, in part, as follows:

"'The question in the case before us may be thus stated: When a husband and wife have lived separate and apart for seven years preceding his death, and he neither contributed nor was asked to contribute to her support, and during said time he lodged in his office and boarded in the family of others, was he, at the time he died, the head of a family within the meaning and intent of the statute? A family is "the collective body of persons who live in a house under one head or manager." Beck, C. J., in Tyson v. Reynolds. A person may be the head of a family, although he has never been married. Wright, J., in Whalen v. Campbell, before cited. The converse of this proposition may also, we think, be true. In the absence of a statute so providing, it is difficult to see why a person boarding in the family of others, and lodging in his office for seven years, can, at the expiration of that time, be regarded as the head of a family. But in order to constitute him such the boarding must be regarded as of a temporary character. It may be, if Dr. Linton had contributed to the support of his wife, he, under the statute, was the head of a family. The mere fact he was liable for her support should, not, we think, make him the head of a family. No family relation, as generally understood, existed between himself and wife. The policy and intent of the statute is to exempt certain property, because the support of a family, great or small, is cast upon the head thereof. Such family must have an actual existence, as distinguished from one that exists theoretically only. It may also be if the separation was of a temporary character or there was any evidence of an intent to resume the marital relation, such fact would form an element entitled to consideration. Nothing of the kind appears. On the contrary, but one conclusion can be fairly drawn, and that is: The separation was final, and so intended to be. Affirmed.

"Armstrong-McClenahan Company v. Rhoads, 180 Iowa, 710, 163 N. W. 356, is a case where a divorced husband claimed certain wages earned by him within 90 days of the levying of a garnishment, as exempt to him as the head of a family. It appears from the facts stated in the opinion that he was divorced from his wife in 1912, upon the application of his wife, who was granted the full care and custody of the minor children, which were all the children the defendant had. The wife was awarded a judgment for $1,500 permanent alimony, and the husband was granted the privilege of visiting his children at suitable times. At the time of the entry of the decree, the husband turned over to his wife's parents his equity in a home, in consideration of which the grandparents agreed to keep and care for the children, with whom they had lived from that time. The husband had not lived with the wife subsequent to the decree, nor with the children, but had lived by himself at all times in rooming and boarding houses. He had contributed to the support of the children, at irregular intervals, furnishing clothing, shoes, and such other necessities as he thought necessary, but had not contributed toward their board and lodging. He had assumed certain obligations contracted for medical services furnished to the children. The question before the court was whether or not, under these facts, he was the head of a family, and as such entitled to claim his wages exempt as personal earnings of a debtor who was the resident head of a family. The court held that he was not, and affirmed the rule of Linton v. Crosby, supra, to the effect that a family is the collective body of persons, who live in a house under one head or manager, and unless such a family existed, he was not the head of a family within the meaning of the statute. See, also, Emerson v. Leonard, 96 Iowa, 311, 65 N. W. 153, 59 Am. St. Rep. 372; Fullerton v. Sherrill, 114 Iowa, 511, 87 N. W. 419; Fox v. Waterloo National Bank, 126 Iowa, 481, 102 N. W. 424; Sheehy v. Scott, 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. (N. S.) 365; In re Estate of Bishop, 130 Iowa, 250, 106 N. W. 637; Blair v. Fritz, 162 Iowa, 716, 144 N. W. 611; Schooley v. Schooley, 184 Iowa, 835, 169 N. W. 56, 11 A. L. R. 110.

"Under the rule laid down in these cases by the Supreme Court of Iowa, it would seem to necessarily follow that, under the facts in the present matter, the bankrupt is not the head of a family within the meaning of the statute. There is no household in which the husband and wife and child are living, and over which he exercises the supervision customarily exercised by one occupying the position of the head of a family. Had the separation been temporary merely, the bankrupt would still remain the head of the family. Whether or not it is temporary is to be ascertained from the intention of the parties in separating, as shown by the existing facts and circumstances. It would seem that the fact of actual separation for a period of over two years, coupled with the additional fact that both the wife and the husband are suing for divorce from each other, in separate actions, indicates an intention on their part that the separation shall be permanent, and that therefore the family shall no longer exist. It must be remembered, also, that a family, as viewed by the Supreme Court of this state, means a group of persons living together in one household. This existed at one time, but does not in fact exist at the present time, and under such circumstances as to indicate very clearly an intention that it shall not exist in the future. Consequently it must follow that the family no longer exists. The fact that the family did exist at one time is immaterial, because it is the situation at the time of the filing of the petition in bankruptcy, only, which controls. Emerson v. Leonard, 96 Iowa, 311, 65 N. W. 153 [59 Am. St. Rep. 372]."

The court has carefully examined the briefs of counsel on the respective sides, and is convinced that, at the time of the filing of the voluntary petition by the bankrupt, his status was not that of a head of a family as contemplated by the statute of Iowa in question, and that the order of the referee petitioned from ought to be and the same is hereby affirmed.