Henry Solnar, Appellant, v. Roy Solnar et al., Appellees.

November 22, 1927.

Rehearing Denied March 10, 1928.

*W. F. Murphy*, for appellant.

*Wilson & Evans*, for appellees.

Faville, J.—In 1866, a man and his wife by the name of Yavorsky lived in Iowa City. They occupied certain real estate in said city as a home. The title to this property was in the

 wife. They had one daughter, Frances. In January, 1867, Frances married a man named Joseph Solnar. After the marriage, Frances and her husband lived at West Liberty for some time. Thereafter they returned to Iowa City, and subsequently removed to Des Moines. Three children were born of this marriage. One is the plaintiff, Henry; another was a daughter, Mary, who was never married, and who died in 1909; the third, a son, Charles, died in 1914, and was survived by his widow and two children. The latter are the defendants in this action. In 1872, said Joseph Solnar left his wife and family in the city of Des Moines, and started for either Council Bluffs or Omaha, and, it is contended by appellees, has never been heard from since. Shortly after Joseph left, Frances returned to her parents' home at Iowa City, with her three children.

In 1883, while Frances and her children were living with her parents on said premises, they deeded the property to her by warranty deed. The granting clause in said deed contained the following provision:

"These grantors retaining to themselves, however, the tenancy and occupation of said property, to themselves jointly and severally during their lives."

The covenants of said deed are in the usual form of those of a warranty deed, but contain the following clause:

"Except the right of the grantors to occupy said property as long as they live."

The mother of Frances, who held the legal title to the premises, died the day the deed was executed. The father and Frances and her children stayed on the premises until the father's death, in 1893. Frances and her children continued in possession of the property thereafter.

Sometime in the nineties,—the exact date does not appear, —the two sons of Frances, Henry and Charles, were married. Each established a home of his own. The daughter, Mary, was later removed from the home to a hospital, where she died in January of 1909. Frances died on April 22, 1925, intestate.

A claim in behalf of Theresa, the widow of Charles and mother of the two appellees, for care of Frances during the latter years of her life, has been established as a claim against her estate. While this action is in partition between the heirs of

Frances, the contest in reality centers on the question as to whether or not the property is subject to the payment of the debts of the decedent, or is exempt therefrom as a homestead.

I. Frances acquired no homestead rights in the premises under her deed until after her father's death, in 1893. During all of said time, the father occupied the premises under the express reservation in the deed, which gave him the "tenancy and occupation" during his life. The occupation by Frances and her children, with the father, was by his sufferance, but did not give her any homestead right in the property until his death. *Therme v. Bethenoid*, 106 Iowa 697; *Roach v. Dance* (Ky.), 80 S. W. 1097; *Cornish v. Frees*, 74 Wis. 490 (43 N. W. 507); *Massillon Engine & Thresher Co. v. Barrow* (Tex.), 231 S. W. 368; 29 Corpus Juris 846.

II. Section 10135, Code of 1924, provides:

"The homestead must embrace the house used as a home by the owner."

Code Section 10138 provides:

"The owner, husband or wife, may select the homestead and cause it to be platted."

Code Section 10150 is as follows:

"The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary, and such right shall continue in favor of the party to whom it is adjudged by divorce decree during continued personal occupancy by such party."

It is to be noticed that, under Code Section 10150, it is the homestead "of every family, whether owned by the husband or wife," that is exempt from judicial sale.

The title to this property in 1893 was vested in the said Frances. She was in possession of the same as a home, maintaining a family of herself and three children, who were dependent upon her for their support. It is a familiar rule that the exemption statutes, and particularly those with regard to homestead rights, are to be liberally construed. The exemption of the homestead is as the homestead of a *family*, whether it is owned by the husband or the wife. In construing our homestead statute, we have long held that a family, within the meaning of this statute, is "a collective body of persons who live in

one house, under one head or management."
*Parsons v. Livingston & Kinkead*, 11 Iowa 104;
*Tyson v. Reynolds*, 52 Iowa 431; *Emerson v.
Leonard*, 96 Iowa 311; *Fullerton v. Sherrill*, 114 Iowa 511;
*Blair v. Fritz*, 162 Iowa 716; *Linton v. Crosby*, 56 Iowa 386;
*Armstrong-McClenahan Co. v. Rhoads*, 180 Iowa 710; *Sheehy v.
Scott*, 128 Iowa 551; *Fox v. Waterloo Nat. Bank*, 126 Iowa 481.
In the latter case, we reviewed the authorities, and cited many
instances as illustrating the application of the rule. In that
case, the husband and wife had separated, and agreed to live
apart. The wife, with certain of the children, left the home-
stead occupied by the family, and immediately thereafter, an
adult daughter abandoned her avocation as a teacher, and went
to live with her father at the home. A decree of divorce was
subsequently obtained between the father and mother. We held
that the father was morally bound to support the adult daughter
who kept the home for him, and that the property was the home-
stead of the father at the time of his death.

In *Armstrong-McClenahan v. Rhoads*, supra, we said:

"The husband and father who resides with and supports
his wife and children is uniformly held to be the head of a
family. The wife, however, under some circumstances may be-
come the head of a family."

In the instant case, Frances held the title to the property.
She occupied it exclusively as a home for herself and her three
children, who were legally dependent upon her for support. Her
husband had not been heard of for probably more than twenty
years, and if in fact living, his whereabouts were unknown.

It is to be noted that the statute with respect to the home-
stead differs from the general exemption statute (Section 11763,
Code of 1924), with regard to the personal earnings of "the head
of a family." It is "the homestead of every family" that is
exempt, and this is true "whether owned by the husband or
wife." Code Section 10150. The exemption is not to "the head
of the family," as such. The homestead may be owned by *either*
the husband or the wife. The vital question is not who is "the
head of the family," but rather, whether there is "a family,"
within the legal meaning of that term, which occupies a home-
stead. If so, the homestead is exempt, whether the title thereto
is in the husband, as "the head of the family," or in the wife.

In this case, "the family" occupied the premises as a family, and the title to the premises was "in the wife." The fact that the husband did not live with the family as a member thereof, under the facts shown in this record, or was dead, did not prevent the property from becoming a homestead occupied by the family.

Under the circumstances established in this case, we hold that the property was the homestead of the said Frances and her children while they lived with her in said premises and occupied the same as one family, after her father's death.

III. Even though Frances had a homestead right in said premises at the time that she occupied the same as a family with her said children, did she have said homestead right at the time of her death? In due course of time, her children grew up, and two of them married and removed from the homestead. The daughter died. The mother was not then occupying the homestead as a widow without children, "continuing to occupy the real estate used as a homestead at the death of the husband," under Code Section 10151. She held the title to this property in her own name. It acquired the homestead character without regard to the husband, whose whereabouts were unknown even before it was acquired. The property had the homestead character under the statute, because it was owned by Frances and occupied by her and her children as a family, they being dependent upon her for their care and support. When that relationship entirely ceased, she occupied the premises merely under her right as owner of said property. There was no family relation any longer.

In *Fullerton v. Sherrill*, supra, we considered a case where a widow, after the death of her husband, purchased property which she occupied as a home with her daughters. The daughters subsequently married, and we held that the homestead right no longer attached to the premises, and that the family relation was essential to the maintenance of the homestead right.

This is not the case of a widow or widower's *continuing to occupy real estate* used as a homestead at the death of the husband or wife, under Code Section 10151. This property was never occupied by the husband. The wife acquired the title in her own name, and occupied it as a family with her children, and while so occupied, it was exempt to her as a homestead. When

the family relation entirely ceased, by the marriage and removal of the two sons and the death of the daughter, she was then left in the situation of a person occupying property owned by her, without any family relation in regard thereto. In no proper sense could it be said that, under such circumstances, she constituted a family. Nor was she the surviving widow of a husband who had occupied the same as a homestead, and who, as such widow, had a right to *continue* to occupy it. Under the proven circumstances, the premises occupied by her alone, after her children were gone, were not a homestead, within the meaning of the law, and were not exempt to her as such. The matter is fully discussed in *Fullerton v. Sherrill, supra*, and cases cited therein.

IV. Even though the said premises were exempt to the said Frances as a homestead while the same were occupied by her and her children as a family, it is contended that the said homestead was abandoned thereafter by the said Frances, and lost its character as a homestead. A large abstract and an extensive amendment have been filed, containing a large amount of evidence bearing on the question of abandonment. We shall not review it. After the marriage of her two sons and the death of her daughter, Frances made her home with her son Charles, and later with his widow. It is true that she retained a room in her said house, and kept certain of her property stored therein. There is evidence of expressions of intention on her part to return to said property and to retain the right to occupy it. The evidence is in conflict; but, considered as a whole, it is sufficient to establish an abandonment upon her part of any homestead right that she had therein, if it be assumed that she had such at the time.

V. The argument of counsel on both sides has been addressed largely to the proposition as to whether or not the facts regarding the absence of Joseph, the husband of the decedent  Frances, are such as to raise a legal presumption of his death. As we view it, this question is not controlling in the instant case. The title to the property in question in this action rested in Frances. At one time, it had the characteristics of a homestead, and these were entirely lost, prior to her death. If Joseph survived her, he had no rights in said property as a homestead. It

had ceased to be a homestead long before Frances died. Joseph, if living, could not claim the right of occupancy as a surviving spouse, under Code Section 10145; for, under its provisions, he could not "*continue* to possess and occupy the homestead." He never had possessed or occupied it. The homestead rights which inured to the benefit of the said Frances and her children while occupying same as a family were utterly lost to her and the family prior to her death. They could not at that time be revived in the interests of her surviving husband (if it be assumed that he did survive her), where he never occupied the property and never acquired any homestead interest therein, and the homestead rights were then lost. No one is claiming in this action any rights in the premises as the heir of Joseph. Appellant insists that Joseph is still living. That fact, if true, would not benefit appellant any in this action for partition, in view of our holding on the question of homestead.

Upon the entire record, the decree of the trial court was correct, and must be affirmed.

Two thirds of the cost of printing appellees' amended abstract will be taxed to appellees.—*Affirmed.*

Evans, C. J., and Stevens, Kindig, and Wagner, JJ., concur.