ERNEST L. POFFINBARGER, Appellant, v. ADMINISTRATOR OF ESTATE OF AQUILLIS S. POFFINBARGER et al., Appellees.

OCTOBER 23, 1928.

*Leo C. Percival,* for appellant.

*Sam C. Smith* and *W. T. Guiher,* for appellees.

FAVILLE, J.—I. The decedent, Aquillis S. Poffinbarger, died intestate July 6, 1925. He left no surviving spouse. He was survived, however, by three children, one of whom is the

appellant. Certain creditors of the appellant's secured judgments against him, prior to the death of the decedent. The property involved in this action consists of about 9 acres of land which was owned by the decedent. The question is whether the said tract of land was the homestead of the decedent at the time of his death, so that a portion of it passed to the appellant, his son, free from the antecedent debts of said appellant. Section 10153, Code of 1924, is as follows:

"Where the homestead descends to the issue of either husband or wife the same shall be held by such issue exempt from any antecedent debts of their parents or their own, except those of the owner thereof contracted prior to its acquisition."

The question for our determination is one of fact: namely, whether, at the time of the death of the said decedent, the premises involved were the homestead of said decedent. It appears from the record that at one time the decedent owned two tracts of land, one of 9 acres and one of 10 acres, which were not contiguous. The wife of the decedent died about 18 years before the death of Aquillis. After her death, the 10-acre tract was sold, and a two-room house was built upon the 9-acre tract in question, and during all of said time, the decedent and his adult son, George, lived on said tract. George was 51 years of age at the time of his father's death. He had acquired no property. He and his father lived together in this two-room house, and "bached." He had been a cripple since he was 8 years of age; for 3 years he had been in bed, and for 15 years he had had to go on crutches. Numerous surgical operations had been performed on his legs and ankles. He was able to work about a third of the time, and there is evidence in the record that about two thirds of the time he had been dependent upon his father. He had never had any home except with his father. The evidence shows that he had helped his father, and had done outside work for others by the day, occupying about a third of his time; that at these times he had chopped wood, and had done trapping, and other forms of employment.

The question resolves itself into one of fact, as to whether or not the son George was so dependent upon his father, and the relationship was such, that it created a family, of which the father was the head. It is a well established rule that the home-

stead law is to be liberally construed. In *Fox v. Waterloo Nat. Bank,* 126 Iowa 481, we reviewed the authorities in regard to what constitutes a family for the purposes of determining the applicability of the homestead law. In that case, an adult daughter abandoned her occupation as a teacher, and went to live with her father, after his separation from his wife, as his housekeeper. He was morally bound to support her, and we held that the father was the head of a family, and that the homestead was exempt to him as such. We reviewed the authorities again in *Armstrong-McClenahan Co. v. Rhoads,* 180 Iowa 710. In *Sheehy v. Scott,* 128 Iowa 551, we said:

"To constitute one or more persons, with another, living together in the same house, a family, it must appear that they are being supported by that other, in whole or in part, and are dependent on him therefor; and, further, that he is under a natural or moral obligation to render such support. *Fox v. Waterloo Nat. Bank,* 126 Iowa 481."

See, also, *Tyson v. Reynolds,* 52 Iowa 431; *Parsons v. Livingston & Kinkead,* 11 Iowa 104, 106; *American Nat. Bank v. Wetherell,* 198 Iowa 648; *Chicago & N. W. R. Co. v. Chisholm,* 79 Ill. 584; *Brooks v. Collins,* 74 Ky. 622, 627.

Under the rules heretofore announced, and upon the record in this case, we are disposed to differ from the conclusion of the learned trial court in regard to the homestead character of the property involved in this action. The adult crippled son, under the undisputed evidence, lived continuously with his father. He made this his home. It was not essential, to constitute a family relationship, that the adult son should be wholly dependent upon his father. Under the undisputed evidence, he was dependent upon him to a large extent. When he was able to do so, he did some outside work by the day, and received wages therefor; but when he was not able to procure such work, the father contributed to his support, and maintained the home. There was no question of his moral obligation to care for this son. Without setting out the evidence in detail, we reach the conclusion that it sufficiently established the fact of the existence of the family relationship, and that the decedent was the head of a family, and that the property in controversy was his homestead.

II. The question of prior adjudication of the matters herein

involved is raised in the case. It is without merit. The notice of the application of the administrator for leave to sell the property was served upon the appellant, and it was stipulated that the property should be sold, and that whatever exemption this appellant had in said real estate should apply to the proceeds of this sale, the same as to the property itself. Under this stipulation, the property was sold, and by virtue of it the appellant has not lost his right to claim his exemption in the manner now sought by the application filed herein. We reach the conclusion that the decree of the trial court was erroneous, and it must be, and it is,—*Reversed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.