### ALVIN R. NELSON'S (representative's) CASE.

Suffolk.    January 16, 1914. — May 19, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDON, DE COURCY,
& CROSBY, JJ.

*Workmen's Compensation Act.   Words, "With whom she lives."*

A woman, who by friendly agreement with her husband lived in Nova Scotia where
she supported herself and their young child while her husband lived and worked
in Boston, cannot be found to have been living with her husband at the time of
his death within the meaning of St. 1911, c. 751, Part II, § 7 (a), which provides
that the wife of a deceased employee "shall be conclusively presumed to be
wholly dependent for support . . . upon a husband with whom she lives at the
time of his death," and, in order to entitle such a widow to receive payments
under the workmen's compensation act, she must prove her "dependency, in
whole or in part, . . . in accordance with the fact, as the fact may be at the
time of the injury."

RUGG, C. J.   This is a proceeding under the workmen's com-
pensation act, where the wife seeks to recover compensation on
the ground that she is conclusively presumed to be wholly de-
pendent upon her deceased husband because living with him at
the time of his death.   These are the material facts: Alice E. Nelson
and her husband, Alvin R. Nelson, were married in December,
1907, in Nova Scotia, and there lived together for six months, when
the husband went to Boston.   He then gave his wife $20, but dur-
ing the succeeding six months sent her no money.   She joined him
in Boston in October, 1908, and lived with him until May, 1909,
when he left for Chicago against her wish, giving her $25.   She then
returned to the home of her parents in Nova Scotia.   In September,
1909, not having sent her any money in the meantime, he re-
turned to Nova Scotia and bought a farm, where they lived to-
gether until July, 1911.   A child was born in August, 1910, and
from then until the following July there was more or less trouble
between them, and finally, because unable to do the farm work
he demanded, and because he told her to take her clothes and go,
she with the baby left their home and went to that of her sister,
which was seventy-five miles distant.   Thereafter her husband
called upon her several times, asking her to return and saying
that he intended to go to Boston to find employment, as he did

not want to stay in Nova Scotia on account of the scandal created by their personal troubles. She did not like to live in Boston and told him she thought it best for the child's health for her to remain in Nova Scotia, and she urged him to stay with her. He finally agreed that she should remain in Nova Scotia with the child, gave her $35, and told her that, if she would remain with the child, he would support them, and went to Boston. She lived with her sister with the child until the following January, when she went away to work, returning to her sister's once a week and sometimes oftener to see the baby, who remained at her sister's. "She earned money enough to support herself and her child. Although the sister fed and cared for the child, the mother bought its clothes and looked after it when she could possibly be where the child was." She sent her husband a picture of the child the following June. He frequently had spoken of returning to Nova Scotia. Death by personal injury arising out of and in the course of his employment intervened; on July 1, 1912. There had never been any talk of a legal separation or divorce, but there was no correspondence between them. There was no evidence to show that either spouse considered that the family relation had been severed, or that this departure of the husband differed from previous ones. He sent her no money during this absence, nor had he on any previous occasion except once when she wrote him and asked him to do so. The last parting was friendly, the husband giving the wife a larger sum of money than upon any previous occasion. He promised to support, and spoke in friendly terms of, his wife and child, and made definite plans to return to them in September.

The natural description of the relation disclosed by these facts is that the husband and wife were voluntarily living apart. Each was earning a living. One wanted to live in Boston and the other wanted to live in Nova Scotia. Each had some apparent pretext for this preference but it is not material to inquire into its substance. The fact is the essential thing. In the common speech of mankind such a relation never would be spoken of as a living together. The decisive words of the workmen's compensation act, St. 1911, c. 751, Part II, § 7, are

"The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: —

(a) A wife upon a husband with whom she lives at the time of his death.

(b) A husband upon a wife with whom he lives at the time of her death.

(c) A child or children under the age of eighteen years . . . there being no surviving dependent parent . . .

"In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury."

"With whom she lives" in (a) means living together as husband and wife in the ordinary acceptation and significance of these words in common understanding. They mean maintaining a home and living together in the same household, or actually co-habiting under conditions which would be regarded as constituting a family relation. There may be temporary absences and incidental interruptions arising out of changes in the house or town of residence, or out of travel for business or pleasure. But there must be a home and a life in it. The matrimonial abode may be a roof of their own, a hired tenement, a boarding house, a rented room or even a room in the house of a relative or friend, however humble or temporary it may be. But it is the situation arising from the existence of a common home, a place of marital association and mutual comfort, broken up or put in peril of hardship or extinction by the husband's death, which is protected by the conclusive presumption of dependency established beyond the peradventure of dispute by the statute. Under such circumstances the widow is given the benefit of an irrefutable assumption that she was supported by the husband. The correlative provision in subsection (b) giving the husband the benefit of a like presumption confirms this view. It would seem almost absurd to hold, if conditions had been reversed and it was the husband who was seeking to recover, that he was wholly dependent upon the wife under the circumstances here disclosed. The general purpose of the act supports this conclusion. Workmen's compensation acts are founded upon the theory of compensation to dependents when death ensues. This rests upon the fact of dependency. The English act makes dependency a question of fact in all cases. *Hodgson* v. *West Stanley Colliery*, [1910] A. C. 229. *Potts* v. *Niddrie & Benhar Coal Co. Ltd.*, [1913] A. C. 531. Our act makes an exception by fixing an

absolute presumption of dependency (without regard to what the fact really is) in favor of a wife and of a husband when there is an actual living together. Each is conclusively presumed to be totally dependent upon the other. It might be extremely difficult to measure the extent of dependency where the wife was earning something beside keeping the house and performing the ordinary wifely duties. Therefore our act says that where there is a real living together the fact of dependency shall not be inquired into; it shall be set at rest by a conclusive assumption. It well may be that this was a legislative concession to the recognized benefit to society arising from the living together of husband and wife, and that like concession should not be made to the anomalous situation of a marital relation not accompanied by a living together, leaving the fact of dependency in such cases to be proved as it is in all other cases. There may be many instances where there is a total dependency although there is a temporary separation of husband and wife. There may be a physical dissociation and a breaking up of the home with a definite purpose to resume the normal conditions of married life. The act provides for these cases by requiring dependency to be determined in accordance with the truth. But words which signify living together do not aptly describe such a situation. These words are used in antithesis to living apart. They exclude a condition where there is neither a home nor an actual dwelling together, and where the suspension of this relation is something more than a mere temporary incident of a changing family habitation.

It seems plain that upon the facts disclosed on this record the deceased employee cannot be described rightly as "a husband with whom she" (the wife) was living "at the time of his death" in the sense in which these words are used in the workmen's compensation act. We are constrained not to follow *Northwestern Iron Co.* v. *Industrial Commission*, 154 Wis. 97, so far as its reasoning is inconsistent with this conclusion.

It follows that the Industrial Accident Board should have ascertained the extent of dependency as a fact in the case at bar and should not have applied the conclusive presumption of subsection (a). The case should be remanded to that board for a further hearing.

*Decree reversed.*

The case was argued at the bar in January, 1914, before *Rugg,* C. J., *Loring, Braley, Sheldon,* & *Crosby,* JJ., and afterwards was submitted on briefs to all the justices.

*S. H. Pillsbury,* (*H. C. Tuttle* with him,) for the insurer.

*I. M. Huggan,* for the administratrix of the estate of the deceased employee.