### HARRY SCOTT'S CASE.

#### Penobscot.    Opinion November 12, 1918.

*General rule of construction to be applied to interpretation of Acts relating to Industrial Accident Commision. Meaning of word "family." Rights of wife, even if living apart from husband. Rule where there are illegitimate children. General meaning of word "dependents."*

(1)    That two persons or groups of persons under a strict application of the language of Sec. VIII, Chap. 50, R. S., must each be conclusively presumed to be wholly dependent upon a deceased employee will not defeat the plain purpose of the Act, known as the Workmen's Compensation Act, which must receive a liberal construction with a view to carrying out its general purpose.

(2)    Under Sec. 8 (a) of Chap. 50, R. S., evidence of whether a wife was being supported by her deceased husband, from whom at the time of his injury she was living apart by reason of his continued desertion without her fault, is immaterial. In such case the presumption that she is wholly dependent upon him is conclusive and cannot be controverted by evidence; but if after his desertion, she has furnished just cause for his refusing to return, she can no longer be conclusively presumed to be wholly dependent upon him in case of his death. In such case her dependency must be proven.

(3)    A woman with whom a deceased employee is living in unlawful union is not a dependent within the meaning of this Act.

(4)    Illegitimate children of a deceased employee with whom they were living and by whom they were being supported at the time of his death are not included among those conclusively presumed to be wholly dependent under Sec. VIII (c) of this Act.

(5)    A collective body of persons who live in one household under a head or manager who has a legal or moral duty to support them constitutes a family within the meaning of the Act, but they must be violating no law in thus living together.

6) A father is violating no law in caring for and supporting his illegitimate children, and when he recognizes them as his and supports them in a household of which he is the head, they are members of his family within the meaning of this Act, even though his lawful wife is living apart from him and the mother of such illegitimate children is a member of the same household and living with him in unlawful union. His unlawful union with the mother does not affect his obligations towards the children of such union, nor their rights under this Act.

Appeal from decree of single Justice affirming the findings of the Chairman of the Maine Industrial Accident Commission. Judgment in accordance with opinion.

Case stated in opinion.

*Harold H. Murchie, and Burleigh Martin,* for Mabel Scott.

*Emery & Waterhouse,* for Eastern Manufacturing Company and American Mutual Liability Company.

*Frederick B. Dodd, and Lawrence V. Jones,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

WILSON, J. This is an appeal from the decree of a single Justice in accordance with the findings of the Chairman of the Industrial Accident Commission under Sec. 34 of Chap. 50, R. S., known as the Workmen's Compensation Act.

On the twenty-fourth day of September, 1917, one Harry Scott received an injury while in the employ of the Eastern Manufacturing Company from which death resulted on the following day. Following his death two claimants filed petitions with the Industrial Accident Commission claiming to be dependents under the Act, viz: Mabel St. Clair Scott, claiming to be the lawful wife of the deceased whom he had deserted, and one by Rachel S. Scott also claiming to be the wife of the deceased and dependent upon him for her support, but whose claim has been abandoned by counsel. The petition of Rachel S. Scott, however, was later amended to include the minor children of said Rachel S. Scott, viz: Irene F., Stanley W., Harry J., and Donald F., aged ten, seven and four years and one year and nine months respectively.

After a hearing the Chairman of the Industrial Commission found from the evidence submitted that Harry Scott received the injury which caused his death in the course of his employment and that at

the time of his injury his "average weekly wage" computed according to subdivision IX of Sec. 1 of the Act was fifteen dollars a week, and that his dependents were therefore entitled to seven dollars and fifty cents per week for a period of three hundred weeks. So far there seems to be no dispute between the several parties to these proceedings.

The questions raised under this appeal are upon the Chairman's rulings as to who the dependents of Harry Scott were at the time of the injury and so entitled to the benefits. Subdivision VIII of section 1 of the Workmen's Compensation Act, Chap. 50, R. S., defines dependents as follows: "Dependents shall mean members of the employee's family or next of kin who are wholly or partly dependent upon the earnings of the employee for support at the time of the injury." It then provides that "the following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

(a)  A wife upon a husband with whom she lives, or from whom she was living apart for a justifiable cause or because he had deserted her, or upon whom she is dependent at the time of the accident.

(c)  A child or children, including adopted and step-children under the age of eighteen years (or over said age but physically or mentally incapacitated from earning) upon the parent with whom he is or they are living, or upon whom he is or they are dependent at the time of the death of the parent, there being no surviving parent."

Bearing upon the question of dependency the Chairman of the Commission from an agreed statement signed by counsel for all claimants found the following facts which appear to be undisputed by either the employer or the insurer: Henry Scott was lawfully married to the claimant Mary St. Clair Scott February 17, 1901, but deserted her after three years of married life. Since the desertion he has never contributed anything toward her support. One child, Herbert Scott, aged sixteen years, was born of this lawful union Five years after the desertion there was born to Mabel St. C. Scott an illegitimate child, Ruth, aged nine years at the time of the hearing.

After the desertion of his wife, Mabel St. C. Scott, Harry Scott, at least ten years before his death, formed an illicit union with one Rachel Somers, who is named in the petition as Rachel S. Scott. The four children named in the petition of Rachel S. Scott the Chairman finds from the agreed statement of counsel to be the illegitimate

children of Harry Scott and Rachel Somers, and were members of his family, and it appears to be assumed in the agreed statement of counsel and in all the discussion and findings of the Chairman that they were all known under the family name of Scott.

Upon these admitted facts the Chairman of the Commission ruled that the four children of Harry Scott and Rachel Somers Scott were members of his family and his next of kin and were wholly dependent upon him for their support at the time of the injury; that Mabel St. C. Scott was not a member of his family, nor dependent upon him for support; that Rachel S. Scott by reason of the illicit union could not be a dependent under the Act; and therefore the four minor illegitimate children of Henry Scott and Rachel S. Scott being the only dependents, were entitled to all the benefits under the Act. From the decree of the Justice rendered in accordance with this decision as required under Sec. 34 of Chap. 50, R. S., the claimant Mabel St. C. Scott, the employer and the insurer all appeal. The contentions of the several parties, and we state the facts and contentions of parties at length owing to the questions of first impression raised by this case under the Act, are as follows:

1.   Mabel St. C. Scott claims that the Chairman of the Commission erred in ruling that she was not a dependent of Harry Scott at the time of the injury inasmuch as she was his lawful wife and had been deserted by him, and by the express terms of the statute is conclusivly presumed to be wholly dependent upon the deceased husband for her support; that the illegitimate children of Harry Scott were not members of his family or his next of kin, because their father and mother were living together contrary to law, and are not within the purview of subdivision VIII (c) of Sec. 1, Chap. 50, R. S., which she contends refers only to legitimate, adopted and step-children.

2.   Counsel for the illegitimate minor children of Harry Scott and Rachel S. Scott contend that while they may not be conclusively presumed to be dependent under paragraph (c) of subdivision VIII of Sec. 1 of the Act yet they were members of the family of Harry Scott within the meaning of the Act, and were as a matter of fact wholly dependent upon him at the time of his death; and that the wife by her act of adultery had terminated the running of her husband's desertion and had thereby taken herself out of the class conclusively presumed to be dependent and was not at the time of his death a member of his family or, at least, was not dependent upon him in fact.

3. Counsel for the employer and insurer join with counsel for each claimant and agree each is correct in his contention, viz: that Mabel St. C. Scott as the lawful deserted wife was wholly dependent upon the deceased and that the four children of Harry Scott and Rachel S. Scott were also wholly dependent upon him; but that such a condition was not contemplated by the statute and therefore the case must be disposed of under section 13 of the Act as though there were no dependents.

We must reject the contention of counsel for the employer and insurer as wholly contrary to the spirit and "general purpose" of the law, *Coakley's Case*, 216 Mass., 71.

We sustain the ruling of the Chairman of the Commission that Mabel St. C. Scott was not a dependent of Harry Scott at the time of the injury, though not for the reasons assigned by the Chairman in his decree. The Chairman appears to find that inasmuch as Mabel St. C. Scott was no longer living with the deceased and was not in fact dependent upon him for support, the conclusive presumption of the statute arising from her marriage to the deceased and his desertion of her is overcome. If there were no other facts in the case than her marriage and his desertion, we think the presumption of her dependency could not be overcome by evidence, but is conclusive. Greenleaf Ev., 16 ed., Vol. 1, Sec. 15; *Nelson's Case*, 217 Mass., 467, 470. The fact of whether she was or not actually a member of his family or dependent upon him for support would then be immaterial.

Another fact, however, appears in this case, which we think takes Mabel St. C. Scott out of the class conclusively presumed to be dependent and places her in the class that requires proof, and that is her act of adultery after being deserted by her husband. Her counsel do not deny that by that act she would be precluded from obtaining a divorce on the ground of desertion. We think the word desertion as used in this connection has its usual meaning when used in connection with marital relations. Desertion as a ground for divorce must continue up to the time of filing the libel, and involves not only the wilful abandonment without just cause, or the consent of the other party, but also the continued refusal to return without justification. If the deserted party at any time furnishes just cause for the one deserting refusing to return, or by his or her acts consents to the separation, desertion as a wilful and unjustifiable abandonment of one party by the other and as a ground of divorce ceases. *Ford* v.

*Ford,* 143 Mass., 577; *Whippen* v. *Whippen,* 147 Mass., 294. Without a conclusive presumption in her favor Mabel St. C. Scott, though she was one of the deceased's next of kin, or. even if within the meaning of the Act was still a member of his family, has no standing in this case, as it is admitted that she was not dependent upon him in fact. *Nelson's Case,* 217 Mass., 467; *Newman's Case,* 222 Mass., 563; *Fierro's Case,* 223 Mass., 378; *Veber's Case,* 224 Mass., 86.

It is not necessary to decide whether the illegitimate children of Harry Scott were his next of kin since, in this case, the only ground upon which it could be claimed that they were his next of kin would be because they had become his heirs under Sec. 3, Chap. 80, R. S., by being adopted into his family. *Morton* v. *Morton,* 62 Neb., 420. If they were members of his family at the time of his death, for that reason alone, being wholly dependent upon him in fact, they would be entitled to the benefits of the Act.

We do not think that illegitimate children come within the class defined in paragraph (c) of subdivision VIII of Sec. 1 of Chap. 50, R. S., and so are conclusively presumed to be dependents of a deceased parent. Notwithstanding the rule of liberal construction expressly enjoined upon those interpreting the Act, the application of the familiar rule of construction, *"Expressio unius est exclusio alterius,"* seems to us upon reason and authority to be proper in this instance. *Lyon* v. *Lyon,* 88 Maine, 395; *Hall* v. *Cressey,* 92 Maine, 514, 516; *Bell* v. *Terry & Tench Co.,* 163 N. Y. S., 733.

The determining factor in this case is were these illegitimate children members of the family of Harry Scott at the time of his death. We must accept the finding of the Chairman of the Commission upon this question as to the fact of their living in that relationship, the only question open for this court is whether they may lawfully be considered members of his family within the meaning of the statute. The word family is one of elastic and somewhat varied meaning. Its meaning in any particular statute is a question of intent and must be determined largely by the purpose of the act and the connection in which it is used. While as used in wills and expressing relationship it has a broader meaning, *Jacobs* v. *Prescott,* 102 Maine, 63, a common definition of the word in acts granting benefits to members of a "family" is "a collective body of persons who live in one house under a head or manager who has a legal or moral duty to support the members thereof." *Fox* v. *Waterloo Nat. Bank,* 126 Iowa, 481;

*Sheeby* v. *Scott*, 128 Iowa, 551, 553; *Holnback* v. *Wilson*, 159 Ill., 148; *Wike Bros.* v. *Garner*, 179 Ill., 257, 259; *Cowden's Case*, 225 Mass., 66, 67; *Robbins* v. *Railway Co.*, 100 Maine, 496, 506.    There appears to be no question from the statement of facts but that Harry Scott, Rachel S. Scott and their children were living together in one household of which Harry Scott was the head and manager supporting them.    But it is urged, and we think the point is well taken, that they must not be violating any law by so doing.    *Gordon* v. *Stewart*, 96 N. W., 624.    The violation of law in this case, however, only applies to Harry Scott and Rachel S. Scott as was recognized in the case last cited; and it was held in *Bell* v. *Keach*, 80 Ky., 42, 45; *Rutherford* v. *Mothershed*, 42 Tex., Civ. Appls., 360; *Lane* v. *Phillips*, 69 Tex., 240; *Roberts* v. *Whaley*, 192 Mich., 133, that there being a natural and moral duty on the part of the father to support his illegitimate children, even though at the time he was living in adultery with the mother, and had a wife living apart, the father and the illegitimate children constitute a household or family entitled to receive the benefits of a Homestead Act, and the illegitimate children were held to be dependents in case of the father's death under the Workmen's Compensation Act of Michigan in the cases above cited.

The common law was very harsh in its attitude toward the offspring of unlawful unions.    Nearly, if not all, the states, however, have relaxed the rigor of the common law rule, especially with reference to the rights of the illegitimate child in the property of his or her parents at their death, and following the more liberal spirit of the civil and canon law have enacted statutes permitting illegitimate children when the parents inter-marry, or when they are publicly acknowledged by the father, to inherit equally from the father and mother and their collateral kindred.    Sec. 3, Chap. 80, R. S.    The natural and moral duty of the father to support and maintain them is generally recognized, Kent Com., Vol. II, pages 212-214; Schouler's Dom. Rel., Sec. 279; Chap. 102, R. S.    Harry Scott was violating no law in fulfilling these natural and moral obligations of caring for and supporting his illegitimate children.    The law condemns his acts so far as his relations with Rachel Somers were concerned, but having brought these children into the world, it was his duty to care for them.    They are not to blame for their conditions nor their manner of coming into existence, and having been recognized by him as his children, the law regards it as his duty to support

them, and having assumed that obligation and maintained them in his household, we think they became members of his family and dependents within the meaning of the Workmen's Compensation Act of this State.

The Michigan case above cited was decided upon this ground. The father in that case had a wife in an asylum for the insane, by whom he had one daughter who was living apart from him, and to whom he contributed nothing toward her support. He formed an illicit union with his housekeeper, by whom he had two children. The court held, there being no provision in the Michigan statute of conclusive dependency on the part of the wife as in the Maine statute, that the wife was not a dependent, she being supported by the State; that the daughter of the lawful wedlock was not a dependent, inasmuch as he was contributing nothing toward her support. The mistress had, of course, no standing in law and apparently made no claim, but it was held that inasmuch as he had cared for and supported the illegitimate children in his household, and it was his legal and moral duty to support them, that they had a right to expect a continuance of that support had he lived, and that they were therefore members of his family and dependents within the meaning of the Michigan statute.

The case of *Bell* v. *Terry & Tench Co.*, 163 N. Y. S., 733, cited by counsel for Mabel St. C. Scott is not in point contra. The New York statute does not provide for the payment of the death benefits to the dependents and then define dependents as many statutes of this nature do, but stipulates that it shall be paid to the wife with additional compensation to children, if any, under eighteen years of age. The court there held that the word children, which the statute expressly provided included posthumous children and children legally adopted, by the familiar rule of construction above referred to, excluded all illegitimate children. We have already applied the same doctrine to the Maine statute, so far as it is applicable to this case.

It is true that the rights of these children of Harry Scott and Rachel S. Scott are purely statutory and unless they can be fairly said to come under its provisions, they cannot take. It is a well recognized rule of construction of Acts of this kind, however, and expressly enjoined upon those whose duty it is to administer this statute, that it shall be construed liberally with a view to carrying out its general purpose, and not strictly as other statutes in derogation of common

law rights usually are. Sec. 37, Chap. 50, R. S.; *Simonds Case*, 117 Maine, 175, 177. We so construe it. The general purpose of this Act undoubtedly is to transfer the burdens resulting from industrial accidents, regardless of who may be at fault, from the individual to the industry and finally distribute it upon society as a whole, by compelling the industry, in which the accident accurs, through the employer, to contribute to the support of those who were actually and lawfully dependent upon the deceased for their sustenance during his lifetime. To transfer it in this case from the deceased upon whom these children were actually dependent in his lifetime and who had lawfully assumed the burden, to this mother, even though she had violated the social canons and the law of the land in producing these offspring, or upon the town in which they may have a pauper residence, is not in accord with the general purpose of this Act.

> *Appeals dismissed with one bill of costs to appellee.*
> *Decree of sitting Justice affirmed.*