# FREDERICKA SCOTT ET AL., CLAIMANTS,

*vs.*

# THE INDEPENDENT ICE CO., EMPLOYER, ET AL.

*Workmen's Compensation Act—Who Entitled—Mistress and Bastard Children.*

A woman living with an employee as his wife, but not legally married to him, is not, although dependent on him, entitled to compensation under the Workmen's Compensation Act, upon his death as the result of an injury.                    pp. 344-348

The words "child or children," as used in the Workmen's Compensation Act, mean legitimate child or legitimate children of the employee.                                                pp. 348, 354

The Workmen's Compensation Act does not entitle a person to compensation simply because such person is a member of the family of the employee and was dependent upon him for support.                                                       p. 346

The statute states who shall be entitled to compensation in specific terms, and courts have no right to go beyond those terms because the parties before them seem to be deserving.     p. 347

*Decided December 9th, 1919.*

*Appeal from the Baltimore City Court (DUFFY, J.).*

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and ADKINS, JJ.

*Thomas Charles Williams* and *Eldridge Hood Young,* for the appellants.

*Walter L. Clark* and *C. M. Charest,* for the appellees.

Boyd, C. J., delivered the opinion of the Court.

This is an appeal by the claimants from an order of the Baltimore City Court, which affirmed a decision of the State Industrial Accident Commission disallowing compensation to them. It was agreed that John Scott was killed on July 26, 1918, while in the employ of the Independent Ice Company, and that the appellants, if dependents under the Workmen's Compensation Law, are entitled to compensation. It was also agreed that if Fredericka Scott were present she would testify as follows: She and John Scott had been living together continuously in the City of Baltimore for the past eight years as husband and wife, although they were never married. As a result of that relation, two children were born to them, viz., Mildred Scott, aged three years in August, 1918, and Avon Scott, aged two months at that time. Since their birth, and at the time of his death, both children and Fredericka Scott had been living with John Scott as members of his family; he had acknowledged them to be his children, had supported them and Fredericka Scott, their mother, and the children had been entirely dependent on him for a living.

The only questions, therefore, which we are called upon to determine are: (a) Whether Fredericka Scott is entitled to compensation under the Workmen's Compensation Law; and (b) Whether Mildred Scott and Avon Scott, the illegitimate children, are entitled to compensation under that law.

Section 36 of Article 101 of the Code, titled Workmen's Compensation, and being a codification of the Act of 1914, Ch. 800, and amendments thereto, begins: "Each employee (or in case of death his family or dependents) entitled to receive compensation under this Article shall receive the same in accordance with the following schedule, and except as in this Article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." Then after providing for compensation to the employee for disabilities, etc., the Section provides that, "In case the injury causes death within the period of

two years, the benefits shall be in the amounts and to the persons following." The. compensation is then named for wholly dependent persons and partly dependent persons, after which the statute provides; "The following persons shall be presumed to be wholly dependent for support upon a deceased employee: A wife or invalid husband ('invalid' meaning one physically or mentally incapacitated from earning), a child or children under the age of sixteen years (or over said age if physically or mentally incapacitated from earning) living with or dependent upon the parent at the time of the injury or death.'

In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death of such employee, but no person shall be considered as dependent unless such person be a father, mother, grandfather, grandmother, stepchild or grandchild, or brother or sister of the deceased employee, including those otherwise specified in this Section." Section 61 of that Article is: "The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this Article; but this Article shall be so interpreted and construed as to effectuate its general purpose."

Although the rights, if any, of these three persons under this statute are somewhat interwoven, and a discussion of the claim of the mother may have some bearing on that of the children, and *vice versa,* we will consider them separately. (*a*) Whatever may be the law in some other States, there can be no doubt that "To constitute lawful marriage here there must be superadded to the civil contract some religious ceremany," *Denison* v. *Denison,* 35 Md. 361, but in this case it is admitted that John Scott and Fredericka were never married, and hence we are not called upon to discuss that question. A wife is "A woman united to a man by marriage," *Bouvier's Law Dict., or* as the definition is given in 30 *Am. & Eng. Enc. of Law,* 522, "a woman who is united to a man

in the lawful bonds of wedlock." If Fredericka had any foundation for her claim for compensation under this act, it would seem to be clear that it could only have been as "wife," but the appellants contend that as she and her children were members of the family of, and supported by John Scott they were entitled to compensation.

The only references we find to "family" in the Act are Section 36 of Article 101 of Code (Section 35 of Act of 1914), the first paragraph of which is quoted above, and in the preamble, where the State "declares that all phases of extra hazardous employments be, and they are hereby withdrawn from private controversy, and sure and certain relief for workmen injured in extra-hazardous employments and their families and dependents are hereby provided for, regardless of questions of fault and to the exclusion of every other remedy, except as provided in this Act." There is also a provision in Section 31 that nothing in the Act shall affect certain existing contracts, "or any arrangement now existing between employers and employees, providing for the payment to such employees, their families, dependents or representatives of sick, accident or death benefits in addition to the compensation provided for by this Article," etc. There is nothing in the Act from which it can properly be contended that any person can recover compensation simply because such person is a member of the family of the employee, and was dependent upon him for support, even if we give the word "family" the broad meaning contended for by appellants. The quotation taken from Bouvier in *Pearre* v. *Smith.* 110 Md. 531, 534, referred to by appellants, that in common parlance the family "consists of those who live under the same roof with the *pater familias,*" is undoubtedly a correct definition as applicable to many questions, although, as JUDGE SCHMUCKER also said in that case, "it has a variety of meanings according to the connection in which it is used, and it should be so construed in each case as to give it the significance appropriate to its use." The first definition given by

Bouvier is "Father, mother and children"—then "All the individuals who live under the authority of another, including the servants of the family." The definition in 12 *Am. & Eng. Enc. of Law,* 866, also referred to by JUDGE SCHMUCKER, is: "A family is defined as a collective body of persons who form one household, under one head and one domestic government, including parents, children and servants, and, as sometimes used, even lodgers or boarders." The "old family servant" in this State, as well as in other portions of the country, was, and still is to a limited extent, an important and respected member of the household, and often in old age wholly dependent on the head of the family, but no one would claim that such or other servants, although dependent on the head of the house, could be entitled to compensation under such an act as this. Nor could it be said that a niece, cousin or other relative not named in this Act or friend who was dependent upon the employee, even for a good consideration, was entitled to compensation under this Act because he or she was a member of the family. The answer to such a claim would plainly be that the statute states who shall be entitled to compensation in specific terms, and Courts have no right to go beyond those terms because the parties before them seem to be deserving. The statute does not provide for substitutes —certainly not for a mistress in place of a wife.

Excepting in jurisdictions where common law marriages are recognized, or there are statutes authorizing such claims, the decisions are for the most part in accord in holding that a woman living with an employee, as man and wife, when he died as the result of an injury, is not entitled to compensation under Workmen's Compensation Laws if not legally married to him, although dependent upon him. Illustrations of the extent to which Courts have gone in so holding may be found in *Hall* v. *Industrial Commission,* 165 Wis. 364, 162 N. W. 312; *Armstrong* v. *Ind. Com.,* 161 Wis. 530, 154 N. W. 844; *Meton* v. *State Ind. Ins. Dept.,* 104 Wash. 652, 177 Pac. 696. Those were hard cases, as the parties believed

they were legally married, but the Courts could not give them relief, or refuse to be governed by the law, but had to administer the law as they found it, just as we had to do in *Geisselman* v. *Geisselman*, 134 Md. 453, where an innocent child had to suffer for the mistake of its parents.

Without deeming it necessary to cite other authorities on the asserted right of the mother to compensation under this Act, we are satisfied that she was not so entitled, and we have no hesitation in agreeing with the decision of the lower Court as to her. We will now consider the claim on behalf of the illegitimate children. In most, if not all States in this country, there has been legislation for the purpose of relieving the unfortunate class known as bastards from the harsh rules of the common law. In addition to the Bastardy Statute, which requires the reputed father, if found guilty, to give bond in a penalty not exceeding $500.00, to pay for the maintenance and support of such child to the mother, or to the person having such child in custody, or to the County or City of Baltimore, as the case may be, if said child be a public charge, until it reaches the age of twelve years, in a sum not to exceed $15.00 a month, as the Court shall direct, and which was intended to indemnify the County or City to some extent at least, as well as to punish the offender, we have a number of statutes in Maryland on the subject of illegitimate children. By Section 11 of Article 6 of Code the Orphans' Courts are authorized to bind out as apprentices illegitimate children. By Section 30 of Article 46 and Section 134 of Article 93 illegitimate children are made capable of taking and inheriting both real and personal estates from their mothers, or from each other, or from the descendants of each other, etc., as if they were born in lawful wedlock. But the only right of inheritance from the father given by our statutes is in Section 29 of Article 46, where it is provided that, "If any man shall have a child or children by any woman whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, in virtue of such

marriage and acknowledgment, be hereby legitimated and
capable in law to inherit and transmit inheritance as if born
in wedlock."

There is nothing in our statutes as to illegitimate children,
which can be construed to give the appellants more right to
compensation under this law than they would have had if
there were no such statutes, unless it be the mere fact that
they indicate an intention of the several Legislatures which
passed them to give such children a better standing and more
rights than they had at common law.  But on the other hand
we find from them that when the Legislatures thought it
proper to give them some relief they did so, 'and have not
deemed it wise in the past to give them relief in some in-
stances which would seem to be as deserving of it as under
the statute now before us.  It would be giving the word
"child," or "children," a much broader meaning than is gen-
erally given it at law, to hold that it meant in this statute
illegitimate child or children.  It is said in 5 *Am. & Eng.
Enc. of Law,* 1095, that, "It is a rule of construction that
*prima facie* the word 'child' or 'children,' when used in a
statute, will or deed, means legitimate child or children.  In
other words, bastards are not within the term 'child' or 'chil-
dren'."  See also 7 *C. J.* 959.  Of course, there may be
cases where the intention of the testator or grantor is shown
by the instrument to include them, and the Courts will carry
out that intention when it can be properly done, and the
same may be said of statutes when the intention of the law-
makers is shown to include illegitimates.  But here we have
the statutes of inheritance and distribution distinctly and
clearly limiting their rights in fathers' estates to those fathers
who have married the mothers and acknowledged the chil-
dren—although our statutes give them the right to inherit
and take from their mothers, etc., thus making a clear dis-
tinction between fathers' aand mothers' estates.

In addition to that, we find that in Section 63 of this stat-
ute the Legislature, in giving definitions as used in that

Article, took the pains to say: " 'Child' shall include a posthumous child and a child legally adopted prior to the injury of the employee." That was done although by Section 133 of Article 93 it was already provided that, "Posthumous children of intestates shall take in the same manner as if they had been born before the decease of the intestate," and there is a similar clause in Section 25 of Article 46 as to inheritance. In Section 74 of Article 16 it is provided that the effect of such decree of adoption as previous sections authorized shall be to entitle the child so adopted to the same rights of inheritance and distribution as to the petitioner's estate, and the same rights of protection, education and maintenance as if born to such petitioner in lawful wedlock. It would be difficult to believe that if the Legislature had intended illegitimate children to have the benefit of this statute, it would not have included them in the definition of "child," inasmuch as it was careful to so define the word as to include posthumous and adopted children, whose rights, in at least the father's estates, were so much greater than illegitimate children under existing statutes. The Legislature could have so easily inserted the words "including an illegitimate child or children" in Section 36, or "and illegitimate children" in Section 63, that no reasonable explanation can be given for it not doing so, except that it did not intend to include them. Unless we must in effect construe Section 61 to mean that Courts must disregard all rules of construction, if necessary to avoid injurious results in what appear to be hard cases, we cannot be justified in sustaining the contention for these appellants.

It could scarcely be contended that under our statute for negligence causing death (Art. 67 of Code), an action could be maintained for the use of an illegitimate child, where it is said in Section 2 that "Every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused," and it is certain that if John Scott had any property when he died these children

would not have been entitled to inherit or take any of it, if he died intestate. Why then should the Court be asked to strain language, or words, beyond its, or their meaning in law, and thereby impose a burden on employers, or their insurers, which it must be conceded would be of at least doubtful right, when the Legislature could so easily have said so if it meant to include illegitimate children, and can yet do so for future cases, if it deems that course proper and just. No employer could have been aware of such a liability, and no insurance company would have had reason to believe that it was assuming it, under the ordinary meaning of the terms used in the statute, and the well-settled rules of construction.

The decisions we have found, or have been referred to, as to the liability to illegitimate children under Workmen's Compensation Laws seem for the most part to have turned on the language and expressions of the particular statutes. One of the most instructive decisions we have found is that in *Scott's case,* 117 Me. 436, 104 At. 794, as it treats of various phases of the law. Harry Scott died from an injury received in the course of his employment. Two claimants filed petitions with the Industrial Accident Commission of Maine. One was by Mabel St. Clair Scott, claiming to be the lawful wife of the deceased, whom he had deserted, and the other by Rachel S. Scott, also claiming to be the wife of the deceased and dependent upon him for support, but her claim was abandoned by counsel. Her petition was, however, amended to include four minor children of her, the oldest being ten years of age and the youngest one year and nine months. Mabel was lawfully married to Harry Scott, but he deserted her after three years of married life and later she gave birth to an illegitimate child. After the desertion of his wife, at least ten years before his death, Harry Scott formed an illicit union with Rachel. They had the four illegitimate children, and they and their mother were members of his family. The Maine Compensation Act defines "dependents" as follows: " 'Dependents' shall mean mem-

bers of the employee's family or next of kin, who are wholly or partly dependent upon the earnings of the employee for support at the time of the injury." The section then provides that "The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee"; naming in paragraph (a) a wife upon a husband with whom she lives, etc., and paragraph (c) is quoted in the opinion as follows: "A child or children, including adopted and stepchildren under the age of eighteen years (or over said age, but physically or mentally incapacitated from earning) upon the parent with whom he is or they are living, or upon whom he is or they are dependent at the time of the death of said parent, there being no surviving * * * parent." The Court held that the wife was not a dependent within the meaning of the statute, by reason of her conduct, and that the illegitimate children by Rachel did not come within the class defined in paragraph (c). It said: "Notwithstanding the rule of liberal construction expressly enjoined upon those interpreting the act, the application of the familiar rule of construction *'Expressio unius est exclusio alterius'* seems to us upon reason and authority to be proper in this instance." The Court also held that the children were entitled to compensation as members of the family—they not being to blame and it being the duty of Harry Scott to support them. But there is no such provision in our statute, as there is in the Maine statute, in reference to the members of the family or next of kin dependent upon the earnings of the employee for support, quoted above, and that decision construed the provision of the Maine statute which is like ours, as we have done. The case of *Roberts* v. *Whaley,* 192 Mich. 133, 158 N. W. 209, referred to by appellants, was also based on a statute. The Michigan statute, as quoted in 2 *Bradbury's Workmen's Compensation,* 1274, had a provision that "No person shall be considered a dependent, unless a member of the family of the deceased employee, or bears to him the relation of husband or widow, or lineal descendant, or ancestor, or brother or sister." The Supreme Court of that State held

that the illegitimate children were children of the employee, lived with him and were members of his family and dependent upon him for support.

In *McDonald* v. *P. C. C. & St. L. Ry. Co.,* 144 Ind, 459, reported in 32 L. R. A. 309, it was held that what corresponds with our statute for Negligence Causing Death gave no right of action to a father for the death of his illegitimate child. A number of cases are cited in that opinion to the effect that when a statute gave the right of action to children, it meant legitimate children only. In *Bell* v. *Terry and Tench Co.,* 177 App. Div. 123, 163 N. Y. Supp. 733, it was decided that "child" or "children" in the New York Compensation Law did not mean illegitimate child or children. That statute had a definition of "child" similar to ours, and the Court said that the Legislature, by including posthumous and adopted children in the definition of "child," must be understood to have excluded any other child or children than such as would be included at common law and under the statutory definition. *Scott's case, supra,* distinctly approves of the conclusion reached in that case. After that decision, the Legislature amended the statute, so as to include "a stepchild or acknowledged illegitimate child dependent upon the deceased." In *Splitdorf Elec. Co.* v. *King,* 90 N. J. 421, 103 At. 674, the Supreme Court of New Jersey construed an amendment to the New Jersey Act, passed in 1913, by which the term "dependents" was made to apply to and include a designated class of persons, among them being "grandchildren, posthumous children (and) illegitimate children." A petition was filed by a daughter of a deceased workman on behalf of herself and her illegitimate child. The lower Court held that the daughter was not entitled to compensation by reason of her age, but that her illegitimate child was entitled as a grandchild. The Supreme Court approved of the decision as to the daughter, but reversed the judgment as to the illegitimate child. It held that the illegitimate child of the daughter of the deceased was not his grandchild, and was not

covered by the statute. In the opinion JUSTICE BERGEN said: "If the Legislature had intended that the bastard children of a decedent workman's children were his dependents, it could readily have said so, and, having omitted to include such persons among the class of dependents entitled to the benefit of the act, the Court cannot supply the omission by what would clearly be the exercise of a legislative function." He also said: "The Workmen's Compensation Act imposes new and extensive obligations upon the employer of workmen in favor of the latter's dependents, and expressly defines who are to be included as dependents, among them being the illegitimate children of the workman residing in his family, to whom he owes the duty of maintenance; and to impose a further obligation on the employer, not provided for by the statute, would be legislation and not judicial construction." The English and other decisions relied on by the appellants are based on statutes which differ from ours, and hence do not require further comment. We have not thought it necessary to discuss the wisdom of provisions in such statutes as include illegitimate children amongst dependents entitled to compensation under them. That is for the Legislature to determine. But however much sympathy we may have for these unfortunate children, we cannot allow them the compensation claimed for them under our view of the law of this State, and must therefore affirm the judgment.

> *Judgment affirmed, Fredericka Scott to pay the costs.*