RALPH HARRINGTON'S (dependent's) CASE.

Suffolk. March 3, 1937. — March 30, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Workmen's Compensation Act*, Dependency. *Husband and Wife. Words,*
"With whom she lives."

A finding that a wife was living with her husband at the time of his death within the meaning of § 32 (a) of the workmen's compensation act was warranted on evidence that they maintained the family relation by being together regularly at week-ends, although she worked and lived away from home throughout the remainder of each week.

CERTIFICATION to the Superior Court under the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

In the Superior Court a decree in accordance with the board's decision was entered by order of *Goldberg*, J. The insurer appealed.

*J. J. Connors & S. L. Sabel*, for the insurer, submitted a brief.

*C. M. Berwick*, for the claimant.

FIELD, J. This is a workmen's compensation case. G. L. (Ter. Ed.) c. 152. The claimant is the widow of the employee who, on October 30, 1935, received a personal injury arising out of and in the course of his employment from which he died on the same day. From a decree of the Superior Court awarding compensation to the claimant as the sole dependent of the deceased employee the insurer appealed.

The Industrial Accident Board found and ruled that the claimant "is the widow of the deceased, that she was living with him as his wife at the time of his death, that she is his sole dependent and as such is conclusively presumed to be totally dependent upon him and entitled to total dependency compensation." The decree of the Superior Court conformed to these findings and rulings.

G. L. (Ter. Ed.) c. 152, § 32, provides that a wife "shall be conclusively presumed to be wholly dependent for support . . . upon a husband [a deceased employee] with whom she lives at the time of his death." The sole question for decision in this case is whether the evidence warranted the finding that the claimant, within the meaning of this statute, was living with her husband at the time of his death so that as matter of law she was entitled to the benefit of the statutory conclusive presumption of total dependency.

The case is close, but we cannot quite say that this finding of the board was not warranted.

The meaning of the statutory phrase "with whom she lives" was explained in *Nelson's Case*, 217 Mass. 467, 469. It was there said that it "means living together as husband and wife in the ordinary acceptation and significance of these words in common understanding. They mean maintaining a home and living together in the same household, or actually cohabiting under conditions which would be regarded as constituting a family relation. There may be temporary absences and incidental interruptions arising out of changes in the house or town of residence, or out of travel for business or pleasure. But there must be a home and a life in it. The matrimonial abode may be a roof of

their own, a hired tenement, a boarding house, a rented room or even a room in the house of a relative or friend, however humble or temporary it may be."

The claimant's testimony in its most favorable aspect was as follows: She and the employee were married in Worcester on September 13, 1930. (Their mode of living thereafter, up to March, 1933, need not be described.) From some time prior to March, 1933, until his death the employee worked — though not steadily — in Enfield. In 1933 or earlier he hired a "cottage or single house" in Enfield and continued to live in it until his death. The claimant, after having had a surgical operation in a hospital in Worcester, went to Enfield in March or April, 1933, and lived there with her husband until April, 1934. She then went to Worcester to work in a laundry and continued to work there until after his death — working regularly five days each week. She had two rooms in Worcester for herself and her aunt. Husband and wife spent each week-end together, either in Worcester or in Enfield. "When her husband did not come to Worcester week-ends, witness used to go to Enfield week-ends. . . . She used to go up to Enfield on Saturday morning and stayed until Sunday night. . . . When she went up to Enfield, she lived with her husband. This manner of living going up there to Enfield to visit her husband continued right up to the time of his death." She "did not like it in Enfield, although she lived there while she did not have work, and she lived there while she was sick. She liked it up there week-ends. She would have lived there if he had steady work and could pay the bills." The employee paid the rent and light bills of the house "or she paid sometimes." He "worked more steadily the last year." When he was working he gave her "whatever he could spare" — "it averaged fully $5 or $6 a week, sometimes $8 and sometimes $10." When the claimant went to Enfield for the week-end she would carry groceries to her husband and "used to cook things and bring them up to him." He "used to pay her for them, and give her 'so much' besides." There was testimony in greater detail but no testi-

mony fixing the relative number of week-ends spent by the claimant and her husband in Worcester and in Enfield.

Clearly it could have been found that for a year prior to April, 1934, the claimant lived with her husband at Enfield. And the evidence warranted a finding that from April, 1934, until the death of the employee, though the claimant was working in Worcester throughout the week, they continued to maintain the family relation by being together regularly at week-ends. The "home and a life in it," however, approached the vanishing point. But it could have been found that there was still a "matrimonial abode" in Enfield of some degree of permanence, and that the separation of husband and wife for the larger part of each week was an interruption of home life incidental to her work — not unlike that in the case of a travelling salesman whose work took him away from home during the week — which was not inconsistent with their "living together as husband and wife in the ordinary acceptation and significance of these words."

The evidence that the claimant was living with her husband, the deceased employee, at the time of his death is stronger than that in cases relied on by the insurer where the evidence was held insufficient to support a finding to that effect. Thus in *Nelson's Case*, 217 Mass. 467, husband and wife had lived apart for about a year with little communication between them; in *Newman's Case*, 222 Mass. 563, "several years before the death of the husband he and his wife separated by mutual consent and agreement, and continued to live apart up to the time of his death" (page 566); and in *McDonald's Case*, 229 Mass. 454, the physical separation continued for more than a year, though there was evidence that the wife remained at home and the husband expected to return (pages 455–456). In *Gilson's Case*, 254 Mass. 460, on the other hand, evidence somewhat stronger than the evidence in the present case was held sufficient to support a finding that husband and wife were living together at the time of his death. The present case falls somewhere between this case and the cases previously cited, but on the side of the line where a

finding that the claimant was living with her husband cannot, as matter of law, be pronounced unwarranted. *Breakey's Case*, 235 Mass. 460, relied on by the insurer, in which the evidence resembled in some respects the evidence in the present case, but differed from it in other respects, merely decided that the finding that husband and wife were not living together could not be said to be wrong as matter of law. It does not require us to disturb the different finding of fact by the board in the present case.

*Decree affirmed.*