EUGENE E. DONNELLY vs. CONTRIBUTORY RETIREMENT
APPEAL BOARD.

Berkshire.   October 7, 1982. — December 13, 1982.

Present: HALE, C.J., ROSE, & GRANT, JJ.

*Retirement. Public Employment*, Retirement, Survivor allowance. *Husband and Wife*, Residence. *Words*, "Living together."

In a proceeding before the Contributory Retirement Appeal Board on an
    application for a survivor allowance under G. L. c. 32, § 12 (2) (*d*), a
    finding that the applicant and his wife, a municipal employee, were
    not "living together" at the time of the wife's death was not supported
    by substantial evidence inasmuch as the wife, who had intended to
    leave the marital home, had not yet done so at the time of her suicide
    and the applicant had only been temporarily absent from the home on
    a four-day trip to visit his sister. [21-24]

CIVIL ACTION commenced in the Superior Court Department on October 10, 1980.

The case was heard by *Simons*, J.

*David O. Burbank* for the plaintiff.

*Mary E. Dacey*, Assistant Attorney General, for the defendant.

ROSE, J.   This case is before the court pursuant to G. L.
c. 30A, § 15, for the review of a judgment of the Superior
Court affirming a decision of the Contributory Retirement
Appeal Board (CRAB).   The plaintiff, Eugene Donnelly,
originally applied for a survivor allowance under G. L.
c. 32, § 12(2)(*d*), when his wife died.   She had been a
member in service of the Pittsfield retirement system.   The
Pittsfield retirement board granted Mr. Donnelly's applica-
tion for a survivor allowance and subsequently affirmed its
decision after a hearing which was requested by Mrs. Don-
nelly's children.   The decision was appealed to CRAB by
the children pursuant to G. L. c. 32, § 16(4).   After a hear-

ing, CRAB determined that Mr. Donnelly did not qualify for a survivor allowance under G. L. c. 32, § 12(2)(d), and instead awarded benefits to Mrs. Donnelly's children, the named beneficiaries under G. L. c. 32, § 11(2).

The issues on appeal involve the statutory construction of G. L. c. 32, § 12(2)(d), as appearing in St. 1972, c. 793, § 1, which states in pertinent part:

> "If a member dies before being retired without an eligible beneficiary other than the spouse of such member nominated under this option, or, notwithstanding the provisions of paragraph (a) of subdivision (2) of section thirteen, if a member in service as described in subparagraph (i) of paragraph (a) of subdivision (1) of section three who has not less than two years of creditable service dies and leaves a spouse to whom such member had been married for not less than one year, or if a member dies within thirty days following the date the retirement of such member became effective without an eligible beneficiary nominated under Option (c) of this section, an election may be made by such spouse to receive the member-survivor allowance under this option; *provided that said spouse and the deceased member were living together at the time of death of such member, or that the board finds that they had been living apart for justifiable cause other than desertion or moral turpitude on the part of the spouse* [emphasis supplied]."

The plaintiff cites as error of law the construction given by CRAB to the words "living together." He also alleges that the decision of CRAB is unsupported by substantial evidence since it denies survivor benefits to him in the absence of evidence that he had deserted his late wife or had been living apart from her due to his moral turpitude.

The evidence surrounding Mrs. Donnelly's death as presented before the hearing at CRAB was as follows. The

plaintiff and Mrs. Donnelly had been having problems with their marriage. The plaintiff was planning a trip to visit his sister shortly before Mrs. Donnelly's death, and he was not going to take his wife with him. She told him that, if he left on his trip without her, she would leave him. The plaintiff refused to change his plans, and Mrs. Donnelly began to move her clothes and possessions out of the house before he was scheduled to leave on his trip. Despite her actions, the plaintiff left, planning to return four days later, on January 29, 1979. Based on the testimony presented, CRAB found that Mrs. Donnelly would have moved completely out of the house before the plaintiff's return but that she was prevented by a storm from doing so. On January 29, 1979, before the plaintiff returned from his trip, Mrs. Donnelly committed suicide in the garage of the marital home. She left behind several notes which stated her reasons for committing the act and placed the blame upon the plaintiff.

This court must determine whether the decision of CRAB was supported by substantial evidence and free from error of law. G. L. c. 30A, § 14. *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979). This determination turns upon the interpretation of G. L. c. 32, § 12(2)(*d*). There is no legislative history which sheds light upon the legislative intent in adding the language at issue, which has remained substantially unchanged since its insertion by St. 1950, c. 670, § 2. Further, there appear to be no published cases construing that language. Therefore, we must turn to the language itself. *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.*, 380 Mass. 212, 214 (1980).

The plaintiff contends that CRAB erred as matter of law in construing the words "living together" to exclude the situation of a wife who intended to leave the marital abode but had not yet done so. In construing the words "living together" it is an established principle that the "words are to be given their usual and ordinary meaning considered in light of the aim to be accomplished by the Legislature."

*Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 546 (1976), quoted in *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.*, 380 Mass. at 214. In this case, the usual meaning of the words "living together" is somewhat ambiguous when applied to the facts. The Donnellys were not together for the four days preceding her death. However, she was still sleeping in the marital home until the time of her death, and it was in the garage of that home that she committed suicide. The plaintiff had not moved out of the home either but was temporarily absent on a trip to visit his sister. Therefore, while they were not physically together, and, according to the evidence presented at the hearing, they did not intend to live together upon the plaintiff's return, neither had established a residence separate and apart from the other.

Since the question whether a husband and wife must have moved into separate residences in order for CRAB to be authorized to find that they were not "living together" within the meaning of § 12(2)(*d*) is not disposed of by the "usual and ordinary meaning" of the words "living together," we turn to analogous statutes for guidance. See 2A Sands, Sutherland Statutory Construction § 51.03 (4th ed. 1973). In the context of § 12(2)(*d*), the words "living together" are used in contradistinction to the words "living apart." It is reasonable to assume that in inserting that subparagraph, the Legislature was aware of the construction of "living apart" in the statutes in the Commonwealth dealing with divorce and separate support. It is also reasonable to assume that the Legislature intended that reference be made to that area of the law because the language at issue in § 12(2)(*d*) contains such phrases as "living apart for justifiable cause" and "desertion," which are terms of art in domestic relations law.

Under G. L. c. 208, § 6B, cited by the plaintiff, a divorce action cannot be commenced unless the parties have been "living apart" for at least thirty days, or the court waives the requirement. We can find no published cases decided under G. L. c. 208, § 6B, which discuss the interpretation of

the words "living apart," and none was cited by the plaintiff.

There are, however, some cases construing the words "living apart" within the meaning of statutory predecessors of G. L. c. 209, § 32, dealing with separate support. In *Smith* v. *Smith*, 154 Mass. 262 (1891), the court upheld a finding of a Probate Court that a wife was "living apart" from her husband for purposes of maintaining an action for separate support. For a period of time before filing her petition, the wife had slept at her father-in-law's house, which was on the same plot of land as her husband's house. She had gone each day to her husband's house and performed her household duties. On the day she filed her petition, however, she did not go to her husband's house, and the court stated that "[w]hen she filed her petition she was in fact not only sleeping, but taking her meals, away from her husband's home, and she has not lived with him since." *Id.* at 265. In *Brewer* v. *Brewer*, 329 Mass. 205 (1952), decided under a prior version of G. L. c. 209, § 32, which required a wife to be "actually living apart" from her husband before filing for separate support, the court held that a wife was not "actually living apart" from her husband in a situation in which she had been sleeping in a different room in the same house with her husband for five years before filing her suit.

Both the *Smith* case and the *Brewer* case appear to place emphasis upon the existence or not of a common marital home. In the instant case, neither the plaintiff nor Mrs. Donnelly had abandoned the marital home. While Mrs. Donnelly may have formed an intention to leave the home before her death, she did not accomplish her goal.

We may also turn to cases decided under the Workmen's Compensation Act for guidance. See G. L. c. 152, §§ 32 & 35A. In *Nelson's Case*, 217 Mass. 467 (1914), the court construed the language in the workmen's compensation statute which states that a wife seeking compensation based upon the conclusive presumption of dependency must be living with her husband. The court stated that the phrase "[w]ith

whom she lives" contemplates a husband and wife who are "maintaining a home and living together in the same household, or actually cohabiting under conditions which would be regarded as constituting a family relation." *Id.* at 469. While there may be "temporary absences" due to "travel for business or pleasure," the court emphasized that "there must be a home and a life in it." *Ibid.* *Harrington's Case,* 297 Mass. 125, 126 (1937). *Legg's Case,* 358 Mass. 615, 616-617 (1971). The court in *Nelson's Case* also stated that the words in the statute were "used in antithesis to living apart." *Id.* at 470.

Since Mrs. Donnelly did not move out of the marital home before her death and since the plaintiff was only temporarily absent from the home we cannot justify as a matter of law the finding by CRAB that Mr. and Mrs. Donnelly were not "living together" at the time of Mrs. Donnelly's death. We need not reach the interpretation of the clause "or that the board finds that they had been living apart for justifiable cause other than desertion or moral turpitude on the part of the spouse" which is also contained in § 12(2)(d).

The judgment of the Superior Court affirming the decision of CRAB is reversed, and a new judgment is to be entered ordering CRAB to order an award of survivor benefits to the plaintiff pursuant to G. L. c. 32, § 12(2)(*d*).

*So ordered.*